The May Department Stores Company, a Corporation *v.* City of Pittsburgh and Joseph L. Cosetti, Treasurer. (2 Cases)

Argued May 4, 1977, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt. Judge Kramer did not participate in the decision.

*Grace S. Harris*, Executive Assistant City Solici-tor, with her *Mead J. Mulvihill, Jr.*, City Solicitor, for appellant.

*A. Sieber Hollinger*, with him *Reed, Smith, Shaw & McClay*, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, August 11, 1977:

The May Department Stores Company (May), a New York corporation, operates a large department store in Pittsburgh (Kaufmann's) and also operates two parking garages under lease from the Public Parking Authority of Pittsburgh (Authority). As the result of an audit performed in August, 1975, the City of Pittsburgh (City), through its Treasurer, determined deficiencies and made assessments for May's Business Privilege Tax[1] returns for the years 1972 through

---

[1] The Business Privilege Tax is levied pursuant to The Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §6901 et seq., by Pittsburgh Ordinance No. 675 of 1968, *as amended* by Ordinance No. 594 of 1970 and No. 1 of 1975.

1975. The deficiencies for tax years 1972 and 1973 are acknowledged to result from May's exclusion of certain contracting receipts which May now admits were taxable. The deficiencies for tax years 1974 and 1975 are similarly acknowledged to result from May's exclusion of receipts from its parking garage operations, receipts which it had included in its returns for 1972 and 1973.

May appealed the deficiency assessments to the Allegheny County Court of Common Pleas contending that its receipts from parking garage operations were not taxable in any year and that the Treasurer erred in: (1) including these receipts in the assessments for tax years 1974 and 1975; and (2) refusing to *exclude* these receipts (even though May had voluntarily included them) in his review of the returns for 1972 and 1973. Since May's parking receipts, voluntarily included in 1972 and 1973 but now claimed to be exempt, were in excess of the contracting receipts, excluded but now admitted to be taxable, May is, in effect, requesting a refund of taxes paid for those two years.

The court below ruled that May's parking receipts were exempt from Business Privilege Tax and that May properly excluded these receipts from its 1974 and 1975 returns.[2] The court also ruled that May was not entitled to any refund of tax paid for any prior years.

The City has appealed, at No. 1244 C.D. 1976, the lower court's ruling that the parking receipts are exempt from tax; May has filed a cross-appeal, at No. 1281 C.D. 1976, from the lower court's refusal to grant a refund for tax years 1972 and 1973, contending that while its alleged overpayment of tax for those years

---

[2] The opinion refers to years 1973 and 1974 but we agree with both parties that this reference was in error and that the court below intended to refer to tax years 1974 and 1975.

may not be refundable, such overpayment should at least be allowed as a setoff up to the amount of the additional assessments made for those years based on the improper exclusion of contracting receipts. Both appeals were consolidated for argument and are disposed of by this opinion.

We begin by noting that Article VIII, Section 2(a) of the Pennsylvania Constitution provides:

> (a) The General Assembly may by law exempt from taxation:
>
> . . . .
>
> (iii) That portion of public property which is actually and regularly used for public purposes; . . .

Further, Section 204(a) of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-204(a) provides:

> The following property shall be exempt from *all* county, *city,* borough, town, township, road, poor and school *tax,* to wit:
>
> . . . .
>
> (7) *All other public property used for public purposes,* with the ground thereto annexed and necessary for the occupancy and enjoyment of the same . . . . (Emphasis added.)

In *Pittsburgh Public Parking Authority v. Board of Property Assessment, Appeals and Review* (hereinafter *Parking Authority I*), 377 Pa. 274, 105 A.2d 165 (1954), our Supreme Court held that Authority property used for public parking continued to be "public property used for public purposes" and, therefore, exempt from real property taxation, even though it was leased to private operators who derived a profit therefrom. That this exemption embraces more than just real property taxation was made clear in *Allegheny County v. Moon Township,* 436 Pa. 54, 258 A.2d 630 (1969). Referring to the constitutional

and statutory provisions cited above, the Supreme Court said:

> . Neither the constitution, nor the statute, say the exemption will be only for property taxes; the statute, in fact, expressly says 'all tax.' The word 'property' is used merely to describe the locus of what the Legislature was exempting, not the type of tax it was exempting it from. *There is no reason to assume that the Legislature did not fully exercise its constitutional power to exempt this property, not only from property taxes, but also from taxes on activities conducted on the property.* We must therefore hold that the tax imposed here by the township on 'public property used for public purposes' is invalid. (Emphasis added.)

436 Pa. at 56, 258 A.2d at 632.

Relying on *Moon Township, supra,* this Court in *City of Pittsburgh v. Public Parking Authority of Pittsburgh* (hereinafter *Parking Authority II*), 11 Pa. Commonwealth Ct. 442, 314 A.2d 887 (1974), held that May, among others, could not be subject to the City's gross receipts tax on parking transactions with respect to the same parking operations involved here. Judge ROGERS stated the law as follows:

> In summary, the cases hold that public parking places created by public parking authorities, whether self-operated or leased for operation by others, *are exempt from all taxes,* whether levied upon them as real estate and called property taxes, or imposed upon the transactions by which they are used and called excise taxes. (Emphasis added.)

11 Pa. Commonwealth Ct. at 447, 314 A.2d at 890. We believe this case is controlled by the cases cited above and will therefore affirm the court below in No. 1244 C.D. 1976.

The attempts to distinquish this case alleging that the incidence of the present tax falls directly on a privilege that does not benefit the public, *i.e.* "the performance of services for profit." Even if we were to accept this view of the tax, which we do not,[3] the fact remains that this is not the controlling test nor does the exemption of Section 204(a)(7) of The General County Assessment Law, 72 P.S. §5020-204(a)(7), depend on whether May derives a profit. *Parking Authority I, supra.*

The City argues further, or perhaps in the alternative, that the instant tax is levied on May's "conduct of a business" and not on its "operation of a public parking lot" and that the parking lot cases cited above only prohibit direct taxes on the parking transaction, which taxes burden the exact purpose of the Authority. However, we note that with respect to the receipts in question, May's "business" *is* the "operation of a public parking lot" and further that *Parking Authority I, supra,* involved a simple property tax which was in no way aimed specifically at the Authority's purpose of providing public parking facilities.

We repeat what was said in *Moon Township, supra,* at 56, 258 A.2d at 631:

> Unfortunately for the township [City], the tax-exempt status of this parking lot does not depend on the label attached to the tax.

The test, quite simply, is whether or not May's activities which the City seeks to tax constitute the use of public property for public purposes. We hold that the operation of public parking lots on property leased from the Authority for precisely that purpose is clear-

---

[3] The Ordinance imposes a tax upon "the privilege of operating or conducting business" as measured by gross receipts. Consequently, it is neither a tax on "the performance of services for profit" nor is it measured by profits.

ly the use of public property for a public purpose and therefore exempt from *all* city tax under *Moon Township, supra, Parking Authority I, supra,* and *Parking Authority II, supra.* Two cases cited by the City, *George A. Fuller Co. v. City of Pittsburgh,* 15 Pa. Commonwealth Ct. 403, 327 A.2d 191 (1974), and *Reading Municipal Airport Authority v. Schuylkill Valley School District,* 4 Pa. Commonwealth Ct. 300, 286 A.2d 5 (1972), are clearly distinguishable as neither involved a *public* use.

With respect to the cross-appeal at No. 1281 C.D. 1976, May has apparently abandoned its attempt to obtain a refund for tax years 1972 and 1973. Such a refund is, in any event, clearly barred by the two year statute of limitations provided in Section 1 of the Act of May 21, 1943, P.L. 349, *as amended,* 72 P.S. §5566b.

Nevertheless, May does assert a right to recoup or set off its alleged overpayments of tax in 1972 and 1973 (resulting from its voluntarily reporting and paying tax on parking receipts) up to the amounts of the assessments for those years, which assessments were based on May's admittedly improper exclusion of certain contracting receipts. Such a right, were it found to exist, would in effect allow May to retroactively litigate and obtain partial relief with respect to the exemption of parking receipts in 1972 and 1973, even though this matter was neither the subject of assessment nor the basis for a timely petition for refund. We hold that no such right exists.

May argues that its position is supported by Section 7(b) of the Business Privilege Tax Ordinance which provides:

> The Treasurer is hereby charged with the administration and enforcement of the provisions of this ordinance, and is hereby empowered to prescribe, adopt, promulgate and enforce

rules and regulations relating to any matter pertaining to the administration and enforcement of this ordinance, including provision for the reexamination and correction of returns, and payments alleged or found to be incorrect, or as to which an overpayment is claimed or found to have occurred, and to make refunds where necessary. Any person aggrieved by any decision of the Treasurer shall have the right to appeal to court as in other cases provided.

Pittsburgh Ordinance No. 675 of 1968, *as amended.*

May interprets this provision to mean that whenever the Treasurer conducts an audit and determines a deficiency, he must also allow for any existing overpayments, even if such ''overpayments'' result from a subsequent legal determination involving a subsequent tax year.

We disagree. This provision merely grants the Treasurer authority to prescribe regulations as to certain matters and does not, standing alone, entitle the taxpayer to any particular right (other than appeal) or manner of treatment. Further, while the Treasurer did ''reexamine'' and ''correct'' May's returns, he found no ''overpayment'' with respect to the inclusion of parking receipts in the 1972 and 1973 returns since his position was that such receipts were taxable. Finally, there is nothing in Section 7(b) to support a construction of ''overpayment'' as including taxes paid on receipts which, with respect to a subsequent tax year, are judicially determined to be exempt.

May also relies on the doctrine of ''equitable recoupment,'' citing *Bull v. United States,* 295 U.S. 247 (1935). Simply stated, this doctrine provides that, at least in some cases, a claim for a refund of taxes barred by a statute of limitation may nevertheless be recouped against a tax claim of the government.

We note first that this doctrine appears largely to be a creature of the federal judiciary and has been applied almost exclusively to federal tax cases. Further, the doctrine has, in any event, been restricted by subsequent cases to situations where "a single transaction constituted the taxable event claimed upon and the one considered in recoupment." *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 299-300 (1946). Here, the assessments for 1972 and 1973 were based on May's admittedly wrongful exclusion of certain contracting receipts while the matter upon which recoupment is based involves the parking receipts. While these items do involve the same tax return we do not view them as involving the "same transaction" as that term is narrowly construed. Finally, we agree with the view expressed in *Rothensies , supra,* that a broad doctrine of recoupment would seriously undermine the statute of limitations in tax matters.

Put simply, May's remedy in this respect was to either timely file a petition for refund or, as it did in 1974 and 1975, claim the exemption and litigate the matter if assessed. Having failed to do either, it cannot now resurrect these remedies and retroactively litigate the matter because of the Treasurer's unrelated assessment.

Judge KRAMER did not participate in the decision in this case.

ORDER

Now, August 11, 1977, the order of the court below is hereby affirmed. Each party to bear its costs.