760 P.2d 1156

**HARMAN'S OF IDAHO, INC., an Idaho corporation, Plaintiff–Respondent,**

v.

**IDAHO STATE TAX COMMISSION, Defendant–Appellant.**

No. 16601.

Supreme Court of Idaho.

July 19, 1988.

Rehearing Denied Sept. 21, 1988.

Jim Jones, Atty. Gen., Mark J. Mimura, Deputy Atty. Gen. (argued) Boise, for defendant-appellant.

Anderson, Pike & Bush, Idaho Falls, for plaintiff-respondent. W. Joe Anderson (argued).

JOHNSON, Justice.

This is an income tax case in which the primary issue is whether the issuance of a deficiency determination by the State Tax Commission concerning the taxes due in a particular year reopens the statute of limitations relating to a claim for credit or refund of taxes paid in an earlier year. We conclude that it does not and reverse the decision of the trial court holding that it

does. We also decide that this is not an appropriate case for the application of the doctrine of equitable recoupment.

## I.

### The Facts.

Harman's of Idaho, Inc. (the taxpayer) filed Idaho income tax returns for 1978, 1979 and 1980, each of which showed a net operating loss (NOL). For 1981, 1982 and 1983 the taxpayer filed returns claiming as deductions NOLs for 1979 and 1980. The Idaho State Tax Commission (the Tax Commission) determined that under I.C. § 63–3022, as it then existed, the taxpayer was not entitled to carry the full amount of the NOLs forward as deductions against taxable income for 1981, 1982 and 1983, but that the taxpayer should have first carried the NOLs back as deductions against taxable income for 1976, 1977 and 1978, before carrying the balance of the NOLs forward as deductions against taxable income for 1981, 1982 and 1983.

The notice of deficiency of the Tax Commission indicating the additional amount of tax due by the taxpayer for 1981, 1982 and 1983 was issued on August 30, 1984. I.C. § 63–3072(d) provides that a claim for credit or refund relating to an overpayment attributable to a NOL carry-back must be made by a taxpayer within forty months and fifteen days following the end of the taxable year of the NOL which results in the carry-back. Under this statute a claim by the taxpayer for credit or refund relating to the NOLs for 1979 and 1980 were required to have been filed by no later than April 15, 1983 and April 15, 1984, respectively.

In recalculating the taxpayer's income tax for 1980, 1981 and 1982, the Tax Commission first applied the NOLs to the taxpayer's taxable income as shown on its returns for 1976 and 1977. The taxpayer's return for 1978 did not show taxable income. The Tax Commission then applied the balance of the NOLs to the years subsequent to 1980 and asserted a deficiency in the taxes due for 1981, 1982 and 1983 of $5,955.00, plus interest. The taxpayer submitted a claim for refund of an over-payment in the taxes paid for 1976 and 1977 of $3,456.96 as a result of the application of the NOLs to those years. The Tax Commission denied this refund or the giving of credit for this amount against the deficiency for 1981, 1982 and 1983, because the claim had not been filed within the period provided for in I.C. § 63–3072(d). The taxpayer claimed that the overpayment for 1976 and 1977 should have been applied as an offset or recoupment against the amount asserted as a deficiency for 1981, 1982 and 1983.

The taxpayer paid the additional tax asserted by the Tax Commission and appealed the Tax Commission's decision to the district court. The district court upheld the Tax Commission's interpretation of I.C. §§ 63–3022 and 63–3072(d), but ruled that under I.C. § 63–3072(c) the taxpayer was entitled to file amended returns for 1976 and 1977 in 1984 after the Tax Commission sent its notice of deficiency determination and to claim a credit or refund within three years after the filing of the amended returns. The district court held that the claim for refund was filed within three years after the due date of amended returns for 1976 and 1977 and that the taxpayer was entitled to offset the overpayment of taxes for 1976 and 1977 against the deficiency assessed by the Tax Commission for 1981, 1982 and 1983.

The Tax Commission appealed the district court's decision.

## II.

The Assessment Of A Deficiency Relating To A Year In Which A NOL Was Incorrectly Claimed As A Deduction Does Not Reopen The Time Within Which A Taxpayer May Make A Claim For Credit Or Refund Relating To An Overpayment Attributable To The Same NOL That Should Have Been Carried-Back To A Prior Year.

During the times applicable to this case, I.C. § 63–3022 provided that a NOL must first be carried back to the three taxable years preceding the year of the

NOL, before carrying the balance of the NOL forward to years following the NOL.

The pertinent portions of I.C. § 63-3072 that relate to this case state:

(a) Where that has been an overpayment of any income tax imposed by this act, the amount of such overpayment shall be credited against any income tax then due from the taxpayer, and any balance of such excess shall be refunded to the taxpayer.

. . . .

(c) No such credit or refund of taxes, penalties or interest paid, shall be allowed or made after three (3) years from the due date of the return or from the time the return was filed, whichever is later, unless before the expiration of such period a claim therefore is filed by the taxpayer; . . . .

(d) If a claim for credit or refund relates to an overpayment attributable to a net operating loss carry-back, in lieu of the three (3) year period of limitation expressed in subsection (c), the period shall be that period which ends with the expiration of the fifteenth day of the fortieth month following the end of the taxable year of the net operating loss which results in such a carry-back.

The district court erroneously ruled that I.C. § 63-3072(d) does not foreclose the filing of amended returns for 1976 and 1977 and the filing of a claim for credit or refund for those years under the provisions of I.C. § 63-3072(c). I.C. § 63-3072(d) is very clear that where a claim for credit or refund relates to an overpayment attributable to a net operating loss carry-back, the statute of limitations for filing a claim for credit or refund is forty months and fifteen days following the end of the taxable year of the net operating loss that results in the carry-back. The fact that the taxpayer chose to claim the entire amount of the NOLs as deductions for the years 1981, 1982 and 1983, rather than applying them first to 1976 and 1977, as the statute required, and the fact that the Tax Commission subsequently correctly applied the NOLs and asserted a deficiency in the taxes due for 1981, 1982 and 1983, do not preclude the application of the limitation provided in I.C. § 63-3072(d).

■ Even if I.C. § 63-3072(c) were the applicable statute of limitations, by its own terms it would not assist the taxpayer, since it limits a claim for credit or refund to three years "from the due date of the return or from the time the return was filed, whichever is later." By the time the Tax Commission issued the notice of deficiency, more than three years had passed since the filing of the 1976 and 1977 returns. The fact that under I.C. § 63-3022 the Tax Commission first carried the NOLs back to 1976 and 1977 before applying them to 1981, 1982 and 1983 did not entitle the taxpayer to file amended returns for 1976 and 1977 and to treat the date of these amended returns as being the date for the beginning of a three-year statute of limitations under I.C. § 63-3072(c). There is no statute that permits the taxpayer to do so.

We reverse the decision of the district court that the taxpayer had a period of three years from 1984 in which to make a claim for a credit or refund relating to the application of the NOLs to the income of the taxpayer for 1976 and 1977.

### III.

### Equitable Recoupment Is Not Applicable

■ The taxpayer contends that this is an appropriate case for the application of the doctrine of equitable recoupment. This is a case of first impression for the application of this doctrine by this Court. Without determining whether equitable recoupment will be applicable in other cases in this state, we hold that it is not appropriate in this case.

The doctrine of equitable recoupment has been developed by the federal courts to prevent "unjust enrichment—it is invoked either by the taxpayer to recover a twice-paid tax or by the Government to prohibit tax avoidance." *Kolom v. United States*, 791 F.2d 762, 766–67 (9th Cir.1986). In its first treatment of the doctrine the Supreme Court stated that "recoupment is in the nature of a defense arising out of some

feature of the transaction upon which the plaintiff's action is grounded." *Bull v. United States*, 295 U.S. 247, 262, 55 S.Ct. 695, 700, 79 L.Ed. 1421 (1935). *See also Stone v. White*, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937). In explaining the doctrine in a subsequent case the Court said:

It has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.

*Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 299, 67 S.Ct. 271, 272, 91 L.Ed. 296 (1946).

The ninth circuit has delineated the three criteria that must be met for the application of the doctrine:

The doctrine of equitable recoupment applies if "a single transaction constitute[s] the taxable event claimed upon and the one considered in recoupment." [Citations omitted.] The single transaction must also be subjected to two taxes based on inconsistent legal theories. [Citation omitted.] Finally, the amount claimed in recoupment must be barred by the statute of limitations, while the asserted deficiency by the government must be timely. [Citations omitted.]

*Kolom*, 791 F.2d at 767.

The facts of this case are not appropriate for the application of the doctrine of equitable recoupment. There is not a "single transaction" in this case that constitutes the taxable event upon which the Tax Commission's claim for additional taxes is based, while at the same time being the basis of the taxpayer's claim for recoupment. The taxpayer portrays the NOLs as the "single transaction" in this case. The NOLs are not a taxable event, but merely the basis for deductions. The NOLs do not generate a tax, but are only a means of avoiding the payment of some tax. The NOLs were not subjected to two taxes based on inconsistent legal theories.

The taxpayer chose to attempt to reduce income taxes payable to the state by deducting the full amount of the NOLs from the taxpayer's income for 1981, 1982 and 1983. When the Tax Commission applied the NOLs in part to 1976 and 1977 in order to recalculate the taxpayer's income tax for 1981, 1982 and 1983, the Tax Commission did not assert a tax on the NOLs, but merely applied the NOLs as the law required. This is not an appropriate case for the application of equitable recoupment.

## IV.

### Conclusion.

The decision of the district court that the taxpayer is entitled to have offset against the additional taxes due for 1981, 1982 and 1983 the overpayment of taxes for 1976 and 1977 is reversed.

Costs to appellant.

No attorney fees were requested.

BAKES and HUNTLEY, JJ., concur.

SHEPARD, Chief Justice, dissenting.

There is only one issue in this case, and the facts relating to that issue are admitted by all. The Tax Commission holds $3,456.00 belonging to the taxpayer, and has deprived the taxpayer of the use of that money since 1977. The Tax Commission does not dispute that it was and is not entitled to that money, but relies on legal niceties and gobbledygook to explain why it need not return the money legitimately due the taxpayer. All citizens labor under the onerous burden of paying various types of taxes. Substantial penalties, both civil and criminal, are imposed on those persons who do not pay their taxes which are due. In my view, concepts of fairness and equity should guide the actions of taxing authorities. Those concepts are embodied in the doctrine of equitable recoupment, and should be applied in the instant case by the courts. In my view such application is necessary since the taxing authority, while admitting that it has the taxpayer's money, takes the position "we gotcha because our technical and accounting procedures took so long that you cannot now claim a refund." I suggest that such a result ac-

cords with neither fairness, equity, or any common sense perception view of how a tax system or tax authority should operate.

As above stated, there is no argument or conflict as to the facts. The taxpayer sustained net operating losses in its business during 1978, 1979 and 1980. Income tax returns were filed indicating such losses. In 1981, 1982 and 1983 the taxpayer's business was profitable and it filed income tax returns so indicating, but indicated thereon the operating losses from the previous years and used them as deductions. It was not until August of 1984 that the Tax Commission decided to disallow the net operating losses indicated on the 1981, 1982 and 1983 returns of the taxpayer. The Tax Commission determined that such net operating losses should have been taken on the income tax returns filed by the taxpayer in 1976 and 1977. The Tax Commission then asserted a deficiency in the taxes due for 1981, 1982 and 1983 of $5,955.00 plus interest. The taxpayer did not dispute that deficiency assessed for those three tax years, but rather asserted if those net operating losses are applied to the 1976, 1977 returns it had then overpaid the income tax for those two years. The Tax Commission does not disagree. The taxpayer then offered to pay the difference between what it owed the Tax Commission and what the Tax Commission owed the taxpayer. Such appears to me to be an eminently fair proposal, and would have resulted in the taxpayer paying exactly what was due, and the Tax Commission obtaining exactly the money to which it was entitled.

Unfortunately, that was not the view taken by the taxing authority. Rather, it said you must pay the money due us, but we will not pay the money owed to you because since we did not make this determination until August 1984 you are barred by the statute of limitation from making claim to the money we admittedly owe you. The district court refused to endorse the attitude of the Tax Commission and ruled in favor of the taxpayer. This Court, however, reverses the determination of the district court, and rules that in income tax cases concepts of fairness and equity are inapplicable and the taxpayer is fair game.

Such will undoubtedly be viewed as a strange brand of justice for all.

The district court in the instant case held that the taxpayer was not barred from claiming the refund for the years 1976 and 1977 because the statute did not begin to run until the determination by the Tax Commission of 1984. As pointed out by the majority, under the applicable income tax statute, the determination of the district court may well have been erroneous. However, I suggest that the decision of the district court may be sustained on other grounds, i.e., equitable recoupment. That doctrine has not prior to today been addressed in the state of Idaho. However, the doctrine has been addressed by the United States Supreme Court in *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), a case somewhat similar to the case at bar. In *Bull* certain business profits had been excluded from an estate tax return. The government assessed a deficiency asserting that the profits should have been included in the estate tax returns. That deficiency was paid. Later the taxpayer asserted the exclusion of those profits from the income tax returns for the years in question. Admittedly double taxation had occurred, however, the government refused to consider such double taxation, asserting that the statute of limitations had expired. Upon reaching the United States Supreme Court the position of the taxpayer was sustained, albeit the statute had indeed expired, with the court stating the retention of the money was "against morality and conscience" although the claim for refund or credit was not presented, or action instituted for restitution within the period fixed by the statute of limitations. The court stated: "While here the money was taken through mistake without any element of fraud, the unjust retention is immoral and amounts in law to a fraud on the taxpayer's rights . . ."

In my view the concepts of fairness and equity enunciated in *Bull* are equally applicable to the case at bar. Here the majority opinion attempts to distinguish the message of *Bull* from the instant case on the

basis that no single transaction has occurred. I would note only in *Bull* that the court's decision was based on the conduct of a going business over a period of years, which had occurred more than ten years prior to the court's decision. In my view the single transaction in the case at issue here was the deficiency assessment by the Commission in August of 1984 which impacted the conduct of a going business in 1976 and 1977.

Hence, I would affirm the decision of the district court, albeit on a different ground. I would also award interest to the taxpayer since the Commission has had the use of that money, just as the Commission would assess interest against any unpaid taxes due and owing.

BISTLINE, Justice, dissenting.

If the time were available, I could recover from the Idaho Reports an Idaho case of some vintage where, on a petition for rehearing which directly challenged the Supreme Court to justify its decision, the answer was simply to the effect that the Court sits to do equity and will do so and achieve justice when necessary.

At one of the oral arguments in this case counsel for the Tax Commission candidly stated that Harman's had been entitled to a statutory refund had it made application therefore. By that, the understanding was gathered that Harman's had paid into the state treasury more than it owed. Which in turn means that the state had received money, which it continued to hold, which Harman's had mistakenly sent in along with what it did owe. Apparently there is not any requirement that the state make any effort to return the money in such circumstances. This would not put the state in the same category with Abraham Lincoln who, which I know for a fact, walked 12 miles each way in cold weather to refund two cents to a woman whom he had accidentally short changed while he was tending store. Of course, even as children many of us thought that Honest Abe could have made the refund when the woman returned to the store. Such seems to be the way the taxing system does operate.

What this case is all about seems to be a mix-up by reason of the taxpayer's *belief* that the overpayment could be recouped in one direction and the state knowing that it had to be done in the other direction, *i.e.*, amending returns for prior years.

For reasons not delved into by the parties, at least not to the extent of aiding in my education and edification, the legislature has set limitations of time for a taxpayer to recover or recoup monies which are still his, theoretically, but which are reposing in the state treasury. Probably this has been done as a matter of bookkeeping expediency, and anyone can understand what an annoyance would result if the state had to keep its books and records on hand to meet eventualities which might not come to pass for ten, fifteen, or more years. But there is no such long time lag as that in this case. There is no doubt that the circumstances here involved are of sufficiently recent origin that it was known by all concerned state employees and the taxpayers that the taxpayer has left his money with the state, and how much.

Now, there may be some statute on the books which requires the state, in such circumstances, to not pay back money which it is not equitably entitled to retain. Otherwise put, the state may be under a legislative mandate to invoke the statute of limitations against the taxpayer. But, on the other hand, if there is not, and where to the state the amount involved is trivial, but not likely so to the taxpayer whose money it is, then one might well wonder why the state has waged this battle to initially lose it. The Tax Commission's brief in support of its petition for rehearing explains very frankly why the battle over $5000 of taxpayer's money continues on:

The Court's opinion in this case correctly observes that the doctrine of equitable recoupment is one of first impression in Idaho. We have asked this Court to reconsider its opinion not because we believe that the doctrine is inapplicable in Idaho, but because we believe the court's decision creates precedent for an over-

broad application. This precedent could have serious adverse and unintended effects on the application of the tax laws of Idaho.

Defendant–Appellant's Brief in Support of Petition for Rehearing, p. 1. The Tax Commission's brief continues:

> The State Tax Commission does not now argue that the doctrine of equitable recoupment should not apply in proper instances. The State Tax Commission only argues that this Court has enunciated too broad of a test for the application of the doctrine. The test is so broad that this Court has taken for itself the power to remedy a statutory provision, the correction of which (if it should be corrected) is the constitutional role of the legislature.

Defendant–Appellant's Brief in Support of Petition for Rehearing, pp. 7–8.

The Court did not, in its initial decision, "remedy" a statutory provision. It did exactly what courts are constituted to do, and hopefully always endeavor to do, and historically have always done beginning with the courts of England, to wit, exercise equitable doctrines when necessary to achieve justice. Moreover, it acted on good authority. While the Tax Commission may be entirely correct in distinguishing the circumstances of the *Bull* case from this case, nothing restricted this Court from granting equitable relief which is fashioned on its own notions of fairness and justice. Contrary to what the Tax Commission seems to suggest, the Idaho legislature has not to my knowledge ever purported to occupy the field of equity.

The Tax Commission has advised us that it:

> ... is not concerned about the revenue effects that may be associated with the relatively rare circumstance in which the doctrine of equitable recoupment could be properly applied under the three criteria established in *Kolom* quoted earlier in this brief.

Defendant–Appellant's Reply Brief in Support of Petition for Rehearing, p. 6. Of course, with this Court now siding with the Tax Commission, the answer will never be

known, but I have difficulty in believing that our initial opinion in this case was not that much more drastic or unsupportable than *Bull* or *Kolom* that the sky would soon be falling.

I continue to adhere to the views of our unanimous 1987 opinion.