870 P.2d 1382

**VIVIGEN, INC., Plaintiff–Appellee,**

v.

**Richard C. MINZNER, Secretary, New Mexico Taxation and Revenue Department, Defendant–Appellant.**

**No. 14325.**

Court of Appeals of New Mexico.

Feb. 8, 1994.

Marshall G. Martin, Joe W. Wood, Fred W. Schwendimann, Hinkle, Cox, Eaton, Coffield & Hensley, Albuquerque, for plaintiff-appellee.

Tom Udall, Atty. Gen., Margaret B. Alcock, Sp. Asst. Atty. Gen., New Mexico Taxation & Revenue Dept., Santa Fe, for defendant-appellant.

## OPINION

HARTZ, Judge.

The Secretary of the New Mexico Taxation and Revenue Department (Department) appeals from a district court judgment awarding Vivigen, Inc., a refund of $115,016.77 in compensating taxes, interest, and penalty that Vivigen paid following the Department's audit for the period January 1, 1984, through June 30, 1990.

The Department based its assessment of taxes against Vivigen on Vivigen's failure to pay compensating taxes. Compensating tax is imposed on one who uses tangible property "acquired outside this state as the result of a transaction that would have been subject to the gross receipts tax had it occurred within this state." NMSA 1978, Section 7–9–7(A) (Repl.Pamp.1990); *see* Section 7–9–9 (Repl. Pamp.1990) (user is liable for payment of compensating tax); *cf.* NMSA 1978, § 7–9–4 (Repl.Pamp.1990) (seller is liable for payment of gross receipts tax). The district court ruling stated four grounds why Vivigen did not have to pay all or part of this tax. First, the district court held that Vivigen was a manufacturer and therefore entitled to the deduction for certain sales of tangible personal property to a person engaged in the business of manufacturing. NMSA 1978, § 7–9–46 (Repl.Pamp.1990). Second, the district court held that the procedures of the Department violated Vivigen's constitutional rights and therefore the Department was not entitled to recover any taxes, interests, or penalty from Vivigen. Third, the district court held that Vivigen was entitled to an offset for investment credits for 1984 through 1990 pursuant to the New Mexico Investment Credit Act, NMSA 1978, §§ 7–9A–1 through 7–9A–9 (Repl.Pamp.1990), even though Vivigen had not claimed the credits within the one-year statute-of-limitations period. Section 7–9A–8 (Effective until January 1, 1991). Fourth, the district court held that Vivigen was not negligent and should not have to pay a negligence penalty. We reverse on all grounds.

## I. DEDUCTION FOR SALES TO MANUFACTURER

█ Vivigen is a biotechnology company whose expertise is in the diagnosis of genetic

disorders that can be detected through the appearance of chromosomes. Vivigen receives specimens of amniotic fluid or other human tissue, uses chemical reagents to nurture cell reproduction in a controlled environment, and then harvests the cultures. The harvested cells are stained and dried by Vivigen's technicians, and individual slides are then reviewed by Vivigen's scientific experts, who render a diagnosis. Vivigen produces two tangible objects that are provided to its customers. First, it provides a written report of its experts' diagnosis. Second, it provides what it calls a laminated karyotype, which consists of photographs of chromosomes that are numbered and pasted onto a piece of laminated cardboard. The laminated karyotype illustrates the findings made by Vivigen and presumably can be used by an outside expert to review Vivigen's diagnosis.

■ We need not decide whether Vivigen can be said to "manufacture" its reports or laminated karyotypes. *See* NMSA 1978, § 7–9–3(G) (Repl.Pamp.1990) (Effective until July 1, 1993) (defining "manufacturing"). Even if it does manufacture those objects, Vivigen has not established its entitlement to a deduction. The manufacturing deduction applies only to a sale of personal property that is incorporated as an ingredient or component part of the manufactured product. Section 7–9–46 states in its entirety:

> Receipts from selling tangible personal property may be deducted from gross receipts if the sale is made to a person engaged in the business of manufacturing who delivers a nontaxable transaction certificate to the seller. The buyer delivering the nontaxable transaction certificate must incorporate the tangible personal property as an ingredient or component part of the product which he is in the business of manufacturing.[1]

Thus, the deduction here would be proper only for purchases of materials that consti-

tute an ingredient or component part of the report or laminated karyotype. Those materials would primarily be paper, cardboard, paste, and film. *See* Deduction—Gross Receipts Tax—Sales to Manufacturers, N.M. Taxation & Revenue Dep't Reg. 7–9–46, No. GR 46:2 (Nov. 26, 1990) (plates used in printing newspapers are not ingredients or component parts of the newspaper); No. GR 46:4 (electricity used in manufacturing does not become an ingredient or component part of the manufactured article). At the hearing in district court Vivigen did not identify any out-of-state purchases (those purchases that would be subject to the compensating tax) of products incorporated into its reports or laminated karyotypes. (The Department had identified as subject to the compensating tax such items as microscopes, sinks, and furniture, which undoubtedly were not incorporated into the documents or laminated karyotypes.) Because the Department's assessment of taxes is presumed to be correct, NMSA 1978, § 7–1–17(C) (Repl.Pamp.1990), the failure of Vivigen to put on any evidence of expenditures for products that became an ingredient or component part of Vivigen's reports or laminated karyotypes forecloses it from any recovery pursuant to the deduction for sales to manufacturers. *See also* NMSA 1978, § 7–9–8(A) (Repl.Pamp.1990) (presumption that property purchased for delivery into this state is bought or sold for taxable use in the state); *Wing Pawn Shop v. Taxation & Revenue Dep't,* 111 N.M. 735, 740–41, 809 P.2d 649, 654–55 (Ct.App.1991) (taxpayer has burden to establish clearly the entitlement to an exemption or deduction).

## II. DUE PROCESS AND EQUAL PROTECTION

As an alternative ground for setting aside the total amount of the assessment against Vivigen, the district court stated that the conduct of the Department in determining the assessment violated Vivigen's rights to

---

1. Because the buyer (user) must pay a compensating tax on an out-of-state transaction only when the seller would have to pay a gross receipts tax on the transaction if it had occurred

within the state, § 7–9–7(A), the deduction from gross receipts provided by Section 7–9–46 also provides a deduction from the compensating tax.

due process and equal protection of the law. *See* N.M. Const. art. II, § 18. We disagree.

The essential facts do not appear to be disputed by the parties. In February 1989 an auditor with the Department overheard a conversation of a passenger sitting directly behind her on an airplane. The passenger, an employee of Vivigen, was discussing the success and rapid growth of the company. Upon returning to her office, the auditor reviewed Vivigen's reporting history on the Department's computer and discovered that the company had never reported compensating taxes. The Department therefore selected Vivigen for a field audit. On February 17, 1989, the Department sent a notice of audit to Vivigen. The notice advised Vivigen that the audit would ordinarily cover records relating to transactions for the three previous years but the period of examination could be extended.

The field audit of Vivigen's books did not begin until August 15, 1990. The Department contends that this delay was the result of normal backlog and the promotion of the auditor who overheard the conversation on the airplane. The audit established a 100% underreporting of compensating taxes during the three-year period under examination. As a result, the audit period was extended back an additional three years to include 1984 through 1986. By mid-September 1990 the Department's auditor had completed examination of all records provided to her by Vivigen. Because Vivigen had provided no invoices, ledgers, or similar records for the tax years 1984 through 1986, the Department relied on Vivigen's corporate income tax returns to estimate its compensating tax liability for those years. The Department offered to delay assessment until Vivigen had an opportunity to locate its records, but only if the company would sign a waiver of any statute-of-limitations defense. Vivigen refused. On November 4, 1990, the Department issued an assessment for taxes, plus penalties and interest, for the period January 1, 1984, through June 30, 1990.

Vivigen paid the assessment and then filed a claim for refund. Vivigen still had not provided the Department with books and records for the tax years 1984 through 1986. The Department denied Vivigen's refund claim, so Vivigen filed a complaint for refund in district court. In the district court proceedings the Department obtained Vivigen's books and records pursuant to a formal request for production. After reviewing the records, the Department concluded that it had overestimated Vivigen's compensating tax liability for 1984 through 1986 by $911.41. Because the statute of limitations barred the assessment of tax for 1984, Vivigen received an actual tax refund of $2017.77, plus the applicable penalty and interest.

Later in the court proceeding Vivigen produced copies of invoices supporting a claim for deduction for sales taxes paid to other states for 1987 through 1990. Based on an examination of those records the Department refunded to Vivigen an additional principal amount of $10,292.08, plus the applicable penalty and interest. At trial Vivigen offered no evidence challenging the accuracy of the Department's final audit figures.

■ Vivigen's brief on appeal raises several attacks on the Department's procedures. First, it contends that the Department's estimated assessment, not having been based upon a review of Vivigen's books of account, was "clearly unwarranted, arbitrary and capricious." Vivigen does not, however, describe the methods of estimation used by the Department and explain why they were irrational. *See Archuleta v. O'Cheskey,* 84 N.M. 428, 504 P.2d 638 (Ct.App.1972) (approving estimation method used by Bureau of Revenue for assessing tax); *Torridge Corp. v. Commissioner of Revenue,* 84 N.M. 610, 506 P.2d 354 (Ct.App.1972), *cert. denied,* 84 N.M. 592, 506 P.2d 336 (1973). In fact, Vivigen does not challenge the Department's statement in its brief in chief that the estimate was very close to the figure that Vivigen did not challenge at trial. More importantly for due process purposes, the Department's assessment was not a final, unreviewable imposition of taxes. Vivigen had the opportunity to challenge the assessment in court and it

did so. *See generally McKesson Corp. v. Division of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) (due process requirements in tax collections). Vivigen has cited no authority for the proposition that the Department violated Vivigen's right to due process of law by making an assessment before Vivigen provided the pertinent records. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (issues unsupported by cited authority will not be reviewed on appeal).

■ Second, Vivigen complains that the Department targeted Vivigen simply because Vivigen had no history of reporting compensating taxes. We fail to see anything arbitrary, capricious, or irrational in such targeting. Unless the Department has sufficient resources to audit all taxpayers continually, it would seem reasonable to concentrate resources on those taxpayers who apparently have failed to meet their obligations.

■ Third, Vivigen complains about the delay of eighteen months from the time of the audit notice to the time of the field audit. It contends that "for an unreasonable period of time, Vivigen was deprived of any opportunity to review its tax situation or to effect any tax planning whatsoever." Vivigen seems to be complaining that the Department did not definitively tell it that it needed to pay compensating taxes on out-of-state purchases so that it could have avoided taxes, interest, and penalties for compensating taxes accrued from and after February 1989. Any necessary notice, however, was provided by New Mexico statutes. In any event, the notice of audit in itself should have induced Vivigen to review applicable state tax laws. Perhaps quicker action by the Department would have induced Vivigen to seek relief from the legislature sooner than it did. *See* 1991 N.M.Laws, ch. 159, § 2 and ch. 162, § 2 ("genetic testing and production" now included in the definition of "manufacturing" under the Investment Credit Act, § 7–9A–3(C)). But that possibility hardly creates a constitutional issue.

Fourth, Vivigen contends that the delay between the notice and the field audit made it more difficult for it to retrieve documents because Vivigen's principal business location was moved in the interim. Vivigen has not informed us of when the move took place, how much the difficulty in retrieving documents was increased as a result of the move, or whether its ability to prove its case was prejudiced. In the criminal context our Supreme Court has held that preaccusation delay by the government does not violate due process unless the delay caused prejudice to the merits of the defendant's case and the state intentionally delayed to gain a tactical advantage. *Gonzales v. State,* 111 N.M. 363, 365, 805 P.2d 630, 632 (1991). The burden to establish a due process violation should be at least as great when a deprivation of property, rather than a deprivation of liberty, is at stake. Vivigen has failed to establish either prejudice to its case or wrongful intent. We therefore reject this argument.

Finally, again without citation to any authority, Vivigen complains of the "high-handed" treatment it received when the field audit was concluded in September 1990. Vivigen does not spell out the particulars of the alleged mistreatment, but apparently it contends that it was improper for the Department to say that unless Vivigen agreed to waiver of the limitations period the Department would not delay assessment until Vivigen provided the pertinent records. We see no impropriety in the Department's conduct in that respect.

In its answer brief on appeal Vivigen also raises one additional equal protection argument, but because the argument was not raised in district court, we do not address it. *See* SCRA 1986, 12–216 (Repl.1992).

## III. INVESTMENT TAX CREDIT/EQUITABLE RECOUPMENT

■ Vivigen contends that even if it owed compensating taxes it was entitled to an investment tax credit for out-of-state purchases of certain equipment and this credit could be used to offset the amount due. The district court agreed, but we do not.

Under the Investment Credit Act a taxpayer carrying on a manufacturing operation

in New Mexico is entitled to an investment credit based on the value of certain "qualified equipment." *See* §§ 7–9A–5 (Effective until January 1, 1991) and –6 (Effective until January 1, 1991). The Department contends that Vivigen is not entitled to claim the credit because (1) Vivigen does not carry on a manufacturing operation in New Mexico and (2) Vivigen did not apply for approval of the credit within one year of the end of the calendar year in which the equipment was purchased, as required by Section 7–9A–8(A). We need not address the first ground, because we agree with the Department that Vivigen's claim for credit was untimely under Section 7–9A–8 and the credit is therefore unavailable as an offset.

Vivigen concedes that its claim for credit was untimely under Section 7–9A–8. It argues, however, that it is entitled to an offset from the assessment under the doctrine of equitable recoupment.

The doctrine of equitable recoupment in the tax-collection context has been developed primarily in the federal courts. The United States Supreme Court set forth the basic doctrine, together with the essential limitations, in *Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 299–300, 67 S.Ct. 271, 272–73, 91 L.Ed. 296 (1946):

> The essence of the doctrine of recoupment is stated in [*Bull v. United States,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935) ]: "[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." 295 U.S. 247, 262[, 55 S.Ct. 695, 700, 79 L.Ed. 1421]. It has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.
>
> The application of this general principle to concrete cases in both of the cited decisions [*Bull* and *Stone v. White,* 301 U.S. 532[, 57 S.Ct. 851, 81 L.Ed. 1265] (1937) ]

is instructive as to the limited scope given to recoupment in tax litigation. In both cases a single transaction constituted the taxable event claimed upon and the one considered in recoupment. In both, the single transaction or taxable event had been subjected to two taxes on inconsistent legal theories, and what was mistakenly paid was recouped against what was correctly due. In *Bull v. United States,* the one taxable event was receipt by executors of a sum of money. An effort was made to tax it twice—once under the Income Tax Act as income to the estate after decedent's death and once under the Estate Tax Act as part of decedent's gross estate. This Court held that the amount of the tax collected on a wrong theory should be allowed in recoupment against an assessment under the correct theory.[2] In *Stone v. White,* likewise, both the claim and recoupment involved a single taxable event, which was receipt by an estate of income for a period. The trustees had paid the income tax on it but this Court held it was taxable to the beneficiary. Assessment against the beneficiary had meanwhile become barred. Then the trustees sued for a refund, which would inure to the beneficiary. The Court treated the transaction as a whole and allowed recoupment of the tax which the beneficiary should have paid against the tax the Government should not have collected from the trustees. Whatever may have been said indicating a broader scope to the doctrine of recoupment, these facts are the only ones in which it has been applied by this Court in tax cases.

---

[2] But the Court emphasized that refund of the incorrect tax was not barred by the statute at the time the Government proceeded for collection of the correct tax.

Thus, weighing the policies favoring enforcement of the statute of limitations in tax cases against the equities favoring the taxpayer, the Supreme Court has decided "that a claim of equitable recoupment will lie only where the Government has taxed a single transaction, item, or taxable event under two inconsistent theories." *United States v. Dalm,*

494 U.S. 596, 605–06 n. 5, 110 S.Ct. 1361, 1366–67 n. 5, 108 L.Ed.2d 548 (1990).

The aspect of the doctrine of equitable recoupment in the tax context that is critical to the present case is that it applies only when the government attempts to collect taxes on the same event *under two inconsistent theories.* If the taxpayer pays taxes on a transaction under one view of the facts and the law, the government cannot impose taxes on the transaction under a different view of the facts or the law without giving the taxpayer credit for the initial amount paid, even though the taxpayer's claim for refund or credit would otherwise be untimely. If the government is correct in its view of the facts and the law, then the taxpayer should not have made the earlier payment and is entitled to a setoff. As stated by one commentator, "[T]he concept of 'single transaction' is satisfied when both the claim sued upon and that sought to be asserted as a defense result from a correction of the same error of fact or law." Note, *Recoupment of Tax Claims Barred by the Statute of Limitations,* 49 Colum.L.Rev. 1156, 1157 (1949) [hereinafter Columbia Note]. *Bull v. United States,* summarized in the above quotation from *Rothensies,* is a typical example of the proper application of the doctrine.

There is remarkably little law regarding the doctrine of equitable recoupment in the context of taxation by states. What we have found, however, indicates that the prevailing rule is that the doctrine is either rejected altogether or is adopted with the restrictions recognized in federal court. *See General Motors Corp. v. Limbach,* 67 Ohio St.3d 90, 616 N.E.2d 204 (1993) (rejecting equitable recoupment in tax cases); *Anderson v. Department of Revenue,* 313 Or. 1, 828 P.2d 1001 (1992) (in banc) (apparently rejecting equitable recoupment); *Harman's of Idaho, Inc. v. Idaho State Tax Comm'n,* 114 Idaho 740, 760 P.2d 1156 (1988) (will be at least as strict as federal standard); *Indiana Dep't of State Revenue v. Smith,* 473 N.E.2d 611 (Ind. 1985) (adopting federal standard); *Superior Air Prods. Int'l v. Director, Division of Taxation,* 9 N.J.Tax 463 (N.J.Tax.Ct.), *aff'd* 10

N.J.Tax 238 (N.J.Super.Ct.App.Div.1988) (same); *May Dep't Stores Co. v. City of Pittsburgh,* 31 Pa.Cmwlth. 398, 376 A.2d 309 (1977) (same); *Enterprise Rent–A–Car Co. v. Director of Revenue,* No. 92–001701RI, 1993 WL 476505, 1993 Mo.Tax LEXIS 196 (Mo.Admin.Hrg.Com. Nov. 15, 1993) (rejecting equitable recoupment); *see also In re Appeal of Northwestern Resources Co.,* No. 92–240, 1993 WL 98442 (Wyo.St.Bd.Eq. Mar. 25, 1993) (administrative tribunal will not recognize equitable recoupment). In 1959 a California Court of Appeal stated in dictum that California might be less strict than *Rothensies* in application of the doctrine of equitable recoupment, *Independent Iron Works v. State Bd. of Equalization,* 167 Cal. App.2d 318, 334 P.2d 236, 242 (1959), but the California Board of Equalization appears to have followed *Rothensies* for some time now, *see In re Appeal of Lipinsky,* No. 88R–0291– MW, 1992 WL 366352, 1992 Cal.Tax LEXIS 45 (Cal.St.Bd.Eq. Dec. 3, 1992); *In re Appeals of Winkenbach,* 1975 WL 3565, 1975 Cal.Tax LEXIS 3 (Cal.St.Bd.Eq. Dec. 16, 1975). In 1949 the New York Court of Appeals adopted a broader version of the doctrine of equitable recoupment than adopted in federal court. *National Cash Register Co. v. Joseph,* 299 N.Y. 200, 86 N.E.2d 561 (1949). Although (1) the two-paragraph discussion of the subject cites *Rothensies* in support without suggesting that the court was consciously rejecting the doctrine as expressed in that case, and (2) the opinion has been criticized, *see* Columbia Note, *supra;* Note, *Taxation—Refunds—Barred Claim for Overpayment of Sales Taxes Recouped Against Tax Deficiency Arising From Other Sales During Same Period,* 63 Harv.L.Rev. 369 (1949), the New York appellate courts have not revisited the issue. In any event, the *National Cash Register* version of equitable recoupment has apparently been followed by Oklahoma, *see Estate of Kasishke v. Oklahoma Tax Comm'n,* 541 P.2d 848 (Okla. 1975), and Wisconsin, *see American Motors Corp. v. Wisconsin Dep't of Revenue,* 64 Wis.2d 337, 219 N.W.2d 300 (1974); *Dairyland Harvestore v. Wisconsin Dep't of Revenue,* 151 Wis.2d 799, 447 N.W.2d 56 (App.), *review denied,* 449 N.W.2d 276 (Wis.1989).

Because of the compelling reasons for respecting statutes of limitations in the tax-collection context, *see Rothensies,* we follow the weight of authority and adopt the standard set forth by the federal courts for application of the doctrine of equitable recoupment to tax collections. In particular, we hold that a taxpayer is not entitled to seek a credit after the statute-of-limitations period has expired unless the state is imposing a tax on the same taxable event on a ground that is inconsistent with the original payment by the taxpayer. This view is not contrary to the New Mexico authorities cited by Vivigen—*State ex rel. State Highway Comm'n v. Town of Grants,* 69 N.M. 145, 149, 364 P.2d 853, 855 (1961), and Justice Montgomery's concurrence in *Resolution Trust Corp. v. Binford,* 114 N.M. 560, 571, 844 P.2d 810, 821 (1992)—neither of which involved taxation or expiration of the statute-of-limitations period.

In the present case the Department is not seeking to subject Vivigen to double taxation by taking inconsistent positions on the facts or the law. Vivigen seeks an investment credit on the ground that it is a manufacturer. The Department's position is simply that Vivigen's out-of-state purchases were subject to the New Mexico compensating tax. Vivigen would have no basis for a claim that the Department's position on the facts and the law establish that Vivigen is entitled to an offset. No conduct by the State—in particular, no conduct inconsistent with the State's present contentions—prevented Vivigen from timely claiming an investment credit if one was available. Any equity favoring Vivigen here is not of sufficient magnitude to justify overriding the limitations period of Section 7–9A–8(A). We therefore reject Vivigen's claim of equitable recoupment.

## IV. THE NEGLIGENCE PENALTY

■ NMSA 1978, Section 7–1–69(A) (Repl. Pamp.1990), provides for the addition of a penalty to any tax due "[i]n the case of failure, due to negligence or disregard of rules and regulations, but without intent to defraud, to pay when due any amount of tax required to be paid or to file by the date

required a return regardless of whether any tax is due[.]" The Department assessed this penalty against Vivigen for its total failure to pay any compensating tax for the period in question. The district court set aside the penalty. There was no basis for this ruling.

Vivigen's chief financial officer testified that she was the person responsible for reviewing Vivigen's monthly tax returns to the state. She testified that prior to the audit she did not know that New Mexico had a compensating tax. She acknowledged that Vivigen's failure to pay the tax resulted from her lack of knowledge of state tax law and was not based on any discussion she had with Vivigen's accountants.

Vivigen's sole argument on this point is the following:

At all times during the audit period, Vivigen was a public corporation, subject to the reporting rules of the United States Securities and Exchange Commission. As a consequence, its financial affairs were annually audited by KPMG Peat Marwick, and that company certified the accuracy of the financial statements contained in the annual reports to shareholders. There is no explanation for the failure of Vivigen's bookkeeping system to account for New Mexico compensating tax liability, or for that failure escaping the attention of the auditors. Nevertheless, Vivigen was not negligent in its consistent reliance on an apparently deficient bookkeeping system. TRD Reg. TA 69:4(d). [References to record omitted.]

This response is not persuasive. Apparently, Vivigen's sole excuse is that the failure to pay compensating use tax was not uncovered by the accountants who certified the accuracy of Vivigen's financial statements for the annual reports to shareholders required by federal securities law. Vivigen offered no evidence that the outside auditors reviewed Vivigen's monthly state tax returns and does not explain why the audit for the annual reports should have uncovered failure to pay compensating tax, nor does it explain why the failure of the auditors to discover the

error would excuse Vivigen's failure to comply with clear state law. We therefore reverse the district court's determination that the penalty assessment was improper.

## V. CONCLUSION

We reverse the district court judgment and remand for entry of judgment in accordance with this opinion.

**IT IS SO ORDERED.**

ALARID, J., concurs.

CHAVEZ, J. dissents.

CHAVEZ, Judge (dissenting).

I disagree with the majority because I believe that a taxpayer can counter with a claim which is barred by the statute of limitations, so long as the same year or income tax period is involved. *See Estate of Kasishke v. Oklahoma Tax Comm'n,* 541 P.2d 848 (Okla. 1975); *American Motors Corp. v. Wisconsin Dep't of Revenue,* 64 Wis.2d 337, 219 N.W.2d 300 (1974); *National Cash Register Co. v. Joseph,* 299 N.Y. 200, 86 N.E.2d 561 (1949). As such, I would address the merits of the case and hold that genetic testing is included within the definition of a "manufacturing operation" as this phrase is used by Sections 7–9A–5 and –6. Thus, Vivigen was entitled to an investment tax credit.