Argued and submitted June 7, reassigned October 12, 1983, reversed February 15, 1984

## ALLIED TIMBER COMPANY,
*Plaintiff-Respondent,*

*v.*

## DEPARTMENT OF REVENUE,
*Defendant-Appellant.*

(TC 1594, SC 29102)

677 P2d 33

G.F. Bartz, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief was Dave Frohnmayer, Attorney General.

Ridgway K. Foley, Jr., and Roy D. Lambert, Portland, argued the cause for respondent. With them on the brief was Schwabe, Williamson, Wyatt, Moore and Roberts.

LENT, J.

Roberts, J., dissented and filed an opinion in which Peterson, C.J., joined.

**LENT, J.**

The Port of Cascade Locks owned land, and under ORS 307.090(1) that land would ordinarily be exempt from taxation.[1] The land was leased to plaintiff, which was the owner of the improvements thereon. As a result of the leasing, the land, as well as the improvements, was subject to taxation by reason of ORS 307.110(1).[2]

During five years of the leasehold period, namely, the tax years 1973-1974 through 1977-1978, the assessor mailed notices of assessment and taxation to the plaintiff. Each notice contained a statement in bold face type that the assessments were for improvements only. The statements showed the assessed value of the improvements. Although, for the purpose of this litigation, it is now stipulated that the values were overstated, plaintiff did not appeal. Plaintiff paid taxes in accordance with the value of the improvements shown on the notices.

The assessor failed, during those five years, to assess the land and to include the land on the assessment roll. Apparently finally realizing that the land was taxable under ORS 307.110(1), the assessor sent to the plaintiff notice that the land would be treated as "omitted property" under ORS 311.207, which requires such property to be placed on the tax rolls for the current tax year and for five preceding years. By its contract with the Port, the plaintiff was required to pay the taxes on both land and improvements.

At this point, the plaintiff reviewed its holdings and concluded that it had actually paid taxes in each year in an

---

[1] ORS 307.090(1) provides:

"Except as provided by law, all property of the state and all public or corporate property used or intended for corporate purposes of * * * ports * * * is exempt from taxation."

[2] ORS 307.110(1) provides:

"Except as provided in ORS 307.120, all real and personal property of this state or any institution or department thereof or of any county or city, town or other municipal corporation or political subdivision of this state, held under a lease or other interest or estate less than a fee simple, by any person whose real property, if any, is taxable, except employes of the state, municipality or political subdivision as an incident to such employment, shall be subject to assessment and taxation for the true cash value thereof uniformly with real property of nonexempt ownerships."

amount which equalled or exceeded the total amount of taxes for both land and improvements. Plaintiff then appealed the assessment for omitted property tax, contending that it was entitled to recoupment for the overpayment of taxes upon the improvements.[3]

The Department of Revenue held against the plaintiff, which then appealed to the Oregon Tax Court. Both in that court and in this, plaintiff has conceded that the doctrine of recoupment has no application unless the described course of events constitutes but one "transaction."[4] The Oregon Tax Court held for the plaintiff. After first recognizing that recoupment is recognized in general in this state, that court, in a written opinion, stated:

"In the court's view, the usual rule that 'recoupment does not permit one transaction to be offset against another' is not vitiated in this instance. While the taxpayer was negligent in the handling of its property tax assessments, failing to note what exactly was covered by the statements on which taxes were paid, the county assessor was equally negligent in failing to tax, simultaneously, the leasehold from the municipality to which the omitted property statute was applied. In the usual and normal course of assessment, both aspects of the property (land and improvements) would have gone out on a single tax statement each year and the problem which presently confronts the court would have been avoided.

"It appears to the court to be unconscionable that a taxing agency, through its negligence, could be permitted to tax the same property twice in the same tax year. The legislature could never have intended such a result when it enacted ORS 311.207. What is asserted by the department to be two transactions should have been one transaction and would have been in the normal course.

"Plaintiff is not entitled to a refund but it is entitled to recoup through the offsetting of its overpaid taxes against the dollar amount of the claims of the county assessor with regard to the omitted property. * * *"

---

[3] The defendant has stipulated that plaintiff's claim that it overpaid taxes upon the improvements is true. The Port has not appealed.

[4] We have found no satisfactory definition of "transaction." Definition of the term has been by way of holding, i.e., that a particular set of facts does, or does not, constitute a single transaction.

Defendant appealed to this court under ORS 305.445. Defendant contends that the assessment and taxation of land and the assessment and taxation of improvements upon the land are separate transactions when the land and the improvements are under separate ownership and, consequently, the doctrine of recoupment cannot apply. The plaintiff contends that the separate assessments of the land and the improvements are so significantly related that this must be considered to be but one transaction, thereby making recoupment available.

ORS 308.115(2) commands that when an improvement is owned separately from the land on which it stands, the improvement must be assessed and taxed in the name of the owner of the improvement.[5] ORS 308.215(1) requires the assessor to prepare the assessment roll in form which separates the value of improvements from the value of land.[6] Under ORS 311.250 the tax collector must mail or deliver to each person shown on the tax roll as an owner of real property a written statement of property taxes payable. The failure of the taxpayer to receive the required statement does not invalidate the assessment, levy, tax, or proceeding to collect the tax. The definition for tax purposes of real property is found in ORS 307.010(1). The definition is by inclusion:

> " 'Land,' 'real estate' and 'real property' include the land itself, above or under water; all buildings, structures, improvements, machinery, equipment or fixtures erected upon, under, above or affixed to the same; all mines, minerals, quarries and

---

[5] ORS 308.115(2) provides:

"[W]henever any * * * improvement * * * is owned separately and apart from the land * * * whereon it stands * * *, such * * * improvement shall be assessed and taxed in the name of the owner thereof."

[6] ORS 308.215(1) provides:

"The assessor shall prepare the assessment roll in the following form:

"(1) Real property shall be listed in sequence by account number or by code area and account numbers. For each parcel of real property, the assessor shall set down in the assessment roll according to the best information the assessor can obtain:

"* * * * *

"(e) The true cash value and the assessed value of the land, excluding all buildings, structures, improvements and timber thereon.

"(f) The true cash value and the assessed value of all buildings, structures and improvements thereon."

trees in, under or upon the land; all water rights and water powers and all other rights and privileges in any wise appertaining to the land; and any estate, right, title or interest whatever in the land or real property, less than the fee simple."

From these statutes it appears that the Port was the owner of real property, i.e., the land, and that the plaintiff was the owner of real property, i.e., the improvements. The assessor was required to assess each separately and to prepare the roll to show separately the value of the land and the improvements. The Port and the plaintiff should have been shown on the roll to each be an owner of distinct "real property." The collector should have sent separate statements of the tax payable. ORS 311.250(1).[7]

The plaintiff should not have been shown on the roll as the owner of the land, and nothing indicates that it was so shown. The tax collector had no duty to send to the plaintiff a written statement of the tax payable on the land. Nothing indicates that during the five year period the tax collector sent any such statement to the plaintiff.

On the other hand, the plaintiff was shown on the roll to be the owner of the improvement, and statements were sent to the plaintiff for the tax payable on the improvements, and the improvements only, as shown in bold face type. This was according to the law.

There is no *in personam* liability for the payment of taxes upon real property in Oregon. If taxes are not paid, collection is by way of foreclosure. This plaintiff had no statutory liability for these taxes and insofar as the statutes are concerned was a stranger to the tax relationship between the Port and the tax assessor and the tax collector.[8]

---

[7] ORS 311.250(1) states:

"Except as to real property assessed to 'unknown owners' pursuant to ORS 308.240(2), prior to the first day of November in each year, the tax collector shall deliver or mail to each person (as defined in ORS 311.605) shown on the tax roll as an owner of real or personal property, or to an agent or representative authorized in writing pursuant to ORS 308.215 by such person, a written statement of property taxes payable on the following November 15."

[8] A tenant may not be a complete stranger, for if a tenant pays a tax on "real estate" that some other person, by agreement or otherwise should pay, the tenant has a statutory right of action to recover the amount paid and may retain the amount out of rent due or accruing from the tenant. ORS 311.285.

According to the statutes reviewed above, we must conclude that there were two separate transactions involved. One was the assessment and levy on the improvements owned by the plaintiff, and the plaintiff, as owner of the improvements, had to pay the tax thereon if plaintiff would avoid loss of the improvements by foreclosure. The other transaction was the assessment and levy on the land owned by the Port, and because that land became subject to taxation when it was leased, the Port, in the first instance, would have had to pay the tax to avoid collection by foreclosure. That the assessor "omitted" the land for the years in question did not change those distinct tax relationships.

This court has noted the place of recoupment in the law. In *Krausse v. Greenfield,* 61 Or 502, 507, 123 P 392 (1912), it is stated:

> " 'Recoupment' is defined to be 'the keeping back and stopping something which is due.' Waterman, Set-Off (2 ed.) § 457. Under the principles of the common law, 'recoupment' could be invoked when the defendant sustained damages by reason of the plaintiff's nonperformance of his part of the contract sued on, in which case the damages to which the defendant was entitled could be abated from the plaintiff's claim. * * *"

Historically, recoupment was considered a matter of defense. It was a shield rather than a sword.[9] It is usually spoken of in terms of its utilization by a "defendant." For example, in *National Cash Register Co. v. Joseph,* 299 NY 200, 86 NE2d 561 (1949), it is stated:

> " 'Recoupment' means a deduction from a money claim through a process whereby cross demands arising out of the same transaction are allowed to compensate one another and the balance only to be recovered. [Citations omitted] Of course, such a process does not allow one transaction to be offset against another, but only permits a transaction *which is made the subject of a suit by a plaintiff* to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole. [Citations omitted]" (Emphasis added)

---

[9] "In the absence of a statute providing otherwise, recoupment is purely defensive and not offensive * * *."

80 CJS, Set-Off and Counterclaim, § 2, p. 6.

In the case at bar it is the plaintiff which asserts a right to invoke the doctrine. The taxpayer does not invoke the doctrine to defend itself against a claim by the tax collector. As stated above, there is no *in personam* liability for the tax on this land. The tax collector has no claim to assert against this plaintiff. Were the tax on the land not paid, the tax collector would proceed by way of foreclosure against the land, which is not owned by this plaintiff. The collector did *notify* plaintiff that the land leased by the plaintiff would be treated as omitted property, but that was not, and could not be, an *in personam* claim. With respect to the land, plaintiff has no liability to the collector arising under the tax laws.

Because of the stipulation that plaintiff paid more than it should have as tax on the improvements, it is indeed tempting to make bad law; however, we resist that temptation as did the Supreme Court of the United States in a somewhat similar case:

> "As statutes of limitation are applied in the field of taxation, the taxpayer sometimes gets advantages and at other times the Government gets them. Both hardships to the taxpayers and losses to the revenues may be pointed out. They tempt the equity-minded judge to seek for ways of relief in individual cases.

> "But if we should approve a doctrine of recoupment of the breadth here applied we would seriously undermine the statute of limitations in tax matters. * * *.

> "We cannot approve such encroachments on the policy of the statute out of consideration for a taxpayer who for many years failed to file or prosecute its refund claim. If there are to be exceptions to the statute of limitations, it is for Congress rather than for the courts to create and limit them."

*Rothensies v. Electric Battery Co.,* 329 US 296, 302-303, 67 S Ct 271, 91 L Ed 296 (1946).

The plaintiff had no statutorily imposed liability for payment of the tax on the land. Plaintiff's liability arose solely from its contractual obligation with the Port.

Because these were separate transactions, recoupment is not available.

Reversed.

**ROBERTS, J.,** dissenting.

I dissent from the majority opinion because I disagree with its conclusion that this taxing procedure involved two transactions. I would hold that it constituted one transaction and that recoupment, therefore, applies.

It is true that ORS 308.115(2)[1] provides that improvements owned separately from the land are to be assessed and taxed in the name of the owner of the improvements. It is also true that the assessment roll must separate the owner of improvements from the owner of the land. ORS 308.215(1).[2] However, the fact of separate assessment for purposes of the assessment records does not resolve whether the taxation of land and improvements is one or two transactions for purposes of equitable recoupment.

The majority relies on the facts that because the Port and plaintiff were owners of separate species of real property, the Port *should have* been sent a tax statement for the land and plaintiff *should have* been sent a tax statement for the improvements. In fact, the Tax Court found that had the assessment been done properly the single statement to plaintiff would have contained the assessment for both land and improvements.[3] Indeed, when the assessor discovered his error, he sent the notice of omitted property pertaining to assessment of the land to plaintiff, the lessee, not to the Port, the owner of the land. I suspect that had the statement properly included both assessments, the overcharge on improvements would doubtless have been apparent to plaintiff immediately. On these facts, I would conclude that the assessment of the improvements and the land was one transaction for the purposes of this case.

I would also hold that recoupment should apply. We have recognized recoupment in a number of actions including fraud in the sale of land, *Hanna v. Hope,* 86 Or 303, 308-09, 168

---

[1] 296 Or 412 at 415, note 4.

[2] 296 Or 412 at 416, note 5.

[3] In its opinion the Tax Court stated:

"In the usual and normal course of assessment, both aspects of the property (land and improvements) would have gone out on a single tax statement each year. * * * What is asserted by the department to be two transactions should have been one transaction and would have been in the normal course."

P 618 (1917); contract, *Wright v. Hage,* 214 Or 400, 330 P2d 342 (1958), and an action by an assignee of a debt, *Rogue River Management Co. v. Shaw,* 243 Or 54, 411 P2d 440 (1966). In *Welch Holding Co. v. Galloway,* 161 Or 515, 89 P2d 559 (1939), we recognized that recoupment may be used to offset tax obligations. In that case the tax commissioner was obliged to refund corporate excise taxes but sought to recoup that amount for an intangibles income tax claimed due. We disallowed recoupment because we found that the state's right to the intangibles tax was unrelated to the plaintiff's cause of action. 161 Or at 537.

Other jurisdictions have applied recoupment in tax cases. The doctrine of recoupment has been applied in cases involving federal estate tax, *Bull v. United States,* 295 US 247, 55 S Ct 695, 79 LEd 1421 (1935); *Stone v. White,* 301 US 532, 57 S Ct 851, 81 LEd 1265 (1937), and in a case involving the assessment of a sales tax deficiency, *National Cash Register Co. v. Joseph,* 299 NY 200, 86 NE2d 561 (1949). In *Smith v. United States,* 373 F2d 419 (4th Cir 1966), the court did not permit the government to invoke the doctrine of recoupment because of its effect on a life beneficiary who was not a party and upon remaindermen who were not known. The court said, however,

> "The doctrine itself is a judge-made exception to the legislative policy of barring claims for and against the Government in tax matters by statutes of limitations, which in final analysis are themselves based upon an equitable principle." 373 F2d at 422.

I agree with the Tax Court that it would be "unconscionable that a taxing agency, through its negligence, could be permitted to tax the same property twice in the same tax year."

I respectfully dissent.

Peterson, C. J., joins in this dissent.