KENNETH FADNER ET AL. *v.* COMMISSIONER OF REVENUE SERVICES
(SC 17655)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued October 16, 2006—officially released March 27, 2007

*Paul L. Bollo*, for the appellants (plaintiffs).

*Paul M. Scimonelli*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

NORCOTT, J. The plaintiffs, Kenneth Fadner and Pamela Fadner, appeal from the judgment of the trial court dismissing their tax appeal from the decision of the defendant, the commissioner of revenue services, denying their request for a tax refund or equitable relief. On appeal,[1] the plaintiffs claim that the defendant should have permitted them to use certain net operating losses as a basis for downward modifications on their state income taxes, and that the trial court improperly declined to exercise its equitable powers pursuant to General Statutes § 12-730,[2] to permit them to pursue a claim for a refund of overpaid taxes that otherwise was barred by the applicable statutes of limitations.[3]

[1] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 12-730 provides in relevant part: "[A]ny taxpayer aggrieved because of any determination or disallowance by the commissioner under section 12-729, 12-729a or 12-732 may, within one month after notice of the commissioner's determination or disallowance is mailed to the taxpayer, take an appeal therefrom to the superior court for the judicial district of New Britain, which shall be accompanied by a citation to the commissioner to appear before said court. . . . Such appeals shall be preferred cases, to be heard unless cause appears to the contrary, at the first session by the court or by a committee appointed by it. Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the Treasurer to pay the amount of such relief, with interest at the rate of two-thirds of one per cent per month or fraction thereof, to the aggrieved taxpayer. If the appeal has been taken without probable cause, the court may charge double or triple costs, as the case demands, and upon all such appeals which may be denied, costs may be taxed against the appellant at the discretion of the court but no costs shall be taxed against the state."

[3] The statute of limitations for Connecticut income tax purposes is General Statutes § 12-732 (a) (1), which provides in relevant part: "If any tax has been overpaid, the taxpayer may file a claim for refund in writing with

Specifically, the plaintiffs claim that the trial court improperly declined to apply the doctrines of equitable estoppel and equitable recoupment. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. The plaintiffs are Connecticut residents who lived in the town of Wilton at all times relevant to this appeal. Kenneth Fadner, who has a degree in finance, regularly prepared the plaintiffs' tax returns. In 1992 and 1993, the plaintiffs incurred substantial net operating losses.[4] For federal income tax purposes, the plaintiffs elected to carry back the net operating losses to the years 1989 and 1990.[5] They subsequently filed amended federal income tax returns for 1989 and 1990, in which

---

the commissioner within three years from the due date for which such overpayment was made, stating the specific grounds upon which the claim is founded . . . ."

The statute of limitations for Connecticut dividends, interest income and capital gains tax purposes is General Statutes § 12-515, which provides in relevant part: "Any taxpayer who feels that he has overpaid any taxes due under this chapter may file a claim for refund in writing with the commissioner within three years from the due date for which such overpayment was made stating the specific grounds upon which the claim is founded. . . ."

[4] A net operating loss occurs when a taxpayer's deductions exceed his income for the year. In such situations, taxpayers are permitted to apply deductions they were unable to use in the loss year to other years in order to average out gains and losses over a longer period of time. "[T]he purpose of allowing operating loss carryovers is to mitigate the rigidity of the annual accounting period . . . and enable a taxpayer to average income and losses over a period of years to reduce the disparity between the taxation of businesses that have stable income and businesses that experience fluctuations in income. . . . An inequitable tax burden would result if companies were taxed during profitable periods without receiving any relief during periods of net operating losses." (Citations omitted; internal quotation marks omitted.) *United Technologies Corp.* v. *Groppo,* 220 Conn. 665, 681, 600 A.2d 1350 (1991).

[5] Prior to August 5, 1997, 26 U.S.C. § 172 (b) of the Internal Revenue Code permitted taxpayers to carry back net operating losses for up to three years preceding the loss year, and then forward for fifteen years following the loss year. Kenneth Fadner testified that the plaintiffs carried back their 1992 net operating loss to the years 1989 and 1990 and their 1993 net operating loss to the year 1990.

they deducted the net operating losses, reducing their federal adjusted gross income to zero for both years and entitling them to a refund from the federal government. The plaintiffs did not, however, amend their Connecticut tax returns for 1989 and 1990.

Calculation of Connecticut income tax begins with a taxpayer's federal adjusted gross income with certain modifications. Regs., Conn. State Agencies § 12-701(a)(20)-1 (a).[6] The modifications do not include the subtraction of net operating losses from a taxpayer's adjusted gross income. See General Statutes § 12-701 (a) (20) (B). Nevertheless, the plaintiffs chose to modify their adjusted gross income in 1995 and 1996 by subtracting the net operating losses they had incurred in 1992 and 1993.[7] In 1995, the plaintiffs took a modification of $3,189,607, and in 1996, a modification of $3,170,061.

It is undisputed that the modifications were improper under the applicable state tax law,[8] but the plaintiffs claim that Kenneth Fadner was advised to take the modifications when he called the toll-free number (help line) maintained by the Department of Revenue Ser-

---

[6] Section 12-701(a)(20)-1 of the Regulations of Connecticut State Agencies provides in relevant part: "(a) The Connecticut adjusted gross income of a resident individual is federal adjusted gross income with certain modifications.

"(b) These modifications relate to items whose treatment for purposes of the Connecticut income tax is different from that under the Internal Revenue Code. . . . When the net amount of the applicable modifications is added to or subtracted from federal adjusted gross income, as the case may be, the result is the individual's Connecticut adjusted gross income. . . ."

[7] The plaintiffs also took a modification for the year 1997, which is not a subject of this appeal.

[8] There is no provision in our state income tax laws for carrying forward or back net operating losses. The plaintiffs in this case instead treated the net operating losses as though they were a basis for the downward modification of their state income tax in 1995 and 1996. We refer to this action as carrying forward the net operating losses for ease of reference and because the parties use that reference in their briefs.

vices (department), to assist taxpayers. According to Kenneth Fadner, he had telephoned the help line and asked about whether he could carry back the net operating losses because Connecticut did not have a state income tax until 1991.[9] The plaintiffs claim that a help line representative informed Kenneth Fadner that he could not carry back the losses, but could carry them forward for the years 1994 through 1999.

In May 1999, the defendant informed the plaintiffs via letter that, following an audit of their 1995 and 1996 state income tax returns, it was disallowing the net operating loss modifications taken by the plaintiffs in those years. This required the defendant to add the net operating loss amounts to the plaintiffs' federal adjusted gross income for Connecticut income tax purposes, which resulted in a total deficiency against the plaintiffs of $26,154.84, including penalties and interest.[10] Although the plaintiffs protested the assessments, the department's appellate division upheld the audit findings of deficiency for 1995 and 1996, and denied their petition for reassessment in March, 2001.

The plaintiffs appealed to the trial court pursuant to § 12-730, challenging the denial of their petition. After a court trial, the trial court concluded that (1) the defendant was not required to allow the plaintiffs to subtract the 1992 and 1993 net operating losses from their adjusted gross income on their 1995 and 1996 returns because net operating losses are not included within the specific modifications permitted by § 12-701 (a) (20)

[9] Connecticut enacted a general personal income tax in 1991 applicable to taxable years commencing on or after January 1, 1991. Public Acts, Spec. Sess., June, 1991, No. 91-3, § 51, now codified at General Statutes § 12-700. Before that time, the state had only a capital gains, dividends and interest income tax.

[10] The total amount due for 1995 was $4355.08, which included $2561.71 tax, $256.17 penalty and $1537.20 interest. The total amount due for 1996 was $21,799.76, which included $13,797.45 tax, $1379.75 penalty and $6622.56 interest.

(B), (2) the plaintiffs' request to file amended tax returns for 1989 and 1990 to claim net operating losses incurred in 1992 and 1993 was barred by General Statutes § 12-515, the applicable statute of limitations, and (3) the defendant was not estopped from making deficiency assessments and denying the plaintiffs the use of the net operating losses that they had incurred in 1992 and 1993. This appeal followed.

On appeal, the plaintiffs claim that the trial court improperly declined to exercise its equitable power to estop the defendant from imposing additional assessments. The plaintiffs also argue that the trial court improperly failed to apply "general equitable principles" to allow them to recoup their overpaid taxes.

I

EQUITABLE ESTOPPEL

The trial court concluded that the doctrine of equitable estoppel did not bar the defendant from assessing deficiencies against the plaintiffs. The plaintiffs claim that this decision was improper because they relied to their detriment on advice from the tax help line in determining how to treat net operating losses under the income tax law, which was new at the time. The defendant argues in response that (1) the plaintiffs have failed to meet the factual burden of proving equitable estoppel against a public agency, and (2) even if one of its agents had provided the plaintiffs with mistaken information, the defendant can never be estopped from correcting misinterpretations of the law. We agree with the defendant's first claim, and conclude that the plaintiffs failed to establish a factual basis for the application of equitable estoppel.

Because tax appeals are de novo proceedings; *Leonard* v. *Commissioner of Revenue Services*, 264 Conn. 286, 294, 823 A.2d 1184 (2003); "[w]e first set forth the

standard of review and applicable legal principles that guide our resolution of this claim. The party claiming estoppel . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . The legal conclusions of the trial court will stand, however, only if they are legally and logically correct and are consistent with the facts of the case. . . . Accordingly, we will reverse the trial court's legal conclusions regarding estoppel only if they involve an erroneous application of the law." (Internal quotation marks omitted.) *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 614, 830 A.2d 164 (2003).

"There are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done." (Internal quotation marks omitted.) *Pet Car Products, Inc.* v. *Barnett,* 150 Conn. 42, 53–54, 184 A.2d 797 (1962). "In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency. . . . As noted, this exception applies where the party claiming estoppel would be subjected to substantial loss if the public agency were permitted to negate the acts of its agents." (Citations omitted.) *Kimberly-Clark Corp.* v. *Dubno,* 204 Conn.

137, 148, 527 A.2d 679 (1987); see also *Dupuis* v. *Submarine Base Credit Union, Inc.*, 170 Conn. 344, 354, 365 A.2d 1093 (1976) (application of equitable estoppel against government agency is "limited and invoked [1] only with great caution, [2] only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and [3] only when special circumstances make it highly inequitable or oppressive to enforce the . . . regulations"). We previously have held these principles to be applicable to the department of revenue services. *Kimberly-Clark Corp.* v. *Dubno*, supra, 147.

A party seeking to justify the application of the estoppel doctrine by establishing that a public agency has induced his actions carries a significant burden of proof. For example, in *Dupuis*, the town of Groton sought an order compelling the defendant credit union to secure a permit for the construction of a new building on the Groton submarine base. *Dupuis* v. *Submarine Base Credit Union, Inc.*, supra, 170 Conn. 345. In its defense, the credit union claimed that, prior to beginning construction, its representative had called the town building inspector's office to inquire specifically about the necessity of a permit, and was told that it did not need one because it was building on federal property. Id., 355. The credit union also claimed that it had telephoned the town building inspector's office two additional times about issues that had arisen after the project began, and was never told that it needed a permit. Id. This court held that these facts were insufficient to invoke the doctrine of equitable estoppel because the plaintiff, having failed to introduce any evidence to identify whom the project superintendent had spoken to when he had called the inspector's office, could not show, "by whom [the] reliance ha[d] been unjustifiably induced." Id.

In this case, the trial court found that the plaintiffs were unable to establish whom Kenneth Fadner had spoken with when he telephoned the tax help line, the date on which he had telephoned the tax help line, or the questions that he had asked the defendant's representative. The plaintiffs, however, point to the testimony of Elaine Leon, the department's director of taxpayer services, who stated that taxpayers are entitled to rely on the advice they receive from the taxpayer services division, as evidence that Kenneth Fadner was justified in relying on the advice he received from the tax help line. The plaintiffs' reliance on Leon's testimony is unavailing because her testimony established only that *if* the plaintiffs had received such advice, *then* they would have been entitled to rely on it. Her testimony does nothing to prove that the plaintiffs in fact received the advice as they claim. Without such evidence in the record, we cannot conclude that the trial court's determination that there was insufficient evidence that the defendant or its agents had induced the plaintiffs' actions was clearly erroneous. Accordingly, the trial court properly declined to apply the doctrine of equitable estoppel against the defendant.[11]

## II

## EQUITABLE RECOUPMENT

We turn next to the plaintiffs' claim that the trial court improperly refused to exercise its equitable powers to

[11] We note that the trial court, in its memorandum of decision, focused primarily on its conclusion that, even if "the agent for the [defendant] gave them the wrong interpretation of the taxing statutes of Connecticut," the plaintiffs could not prevail because the defendant must always be permitted to correct mistaken interpretations of the law. The trial court's holding was based on an opinion by the United States Tax Court and an unpublished opinion from Washington, both of which support the proposition that equitable estoppel does not apply to erroneous advice relating to construction of statutory provisions. See *Neri* v. *Commissioner of Internal Revenue*, 54 T.C. 767 (1970); *Chiawana, Inc.* v. *Dept. of Revenue*, Court of Appeals of Washington, Division Three, No. 21559-8-III (January 27, 2004). This court previously has not adopted that proposition, and it is unnecessary for us

allow them to offset their past overpayments of income taxes against the deficiencies later assessed by the defendant.[12] Both parties agree that the plaintiffs' treatment of the net operating losses was incorrect under the applicable statutes, which resulted in the plaintiffs' paying more than their share of taxes in 1990 and less than their share of taxes in 1995 and 1996. The plaintiffs argue that, because both the overpayments and the deficiencies arose out of their mistaken treatment of the same net operating losses, they have satisfied the requirements of the doctrine of equitable recoupment as outlined by the United States Supreme Court in *Bull* v. *United States*, 295 U.S. 247, 262–63, 55 S. Ct. 695, 79 L. Ed. 1421 (1935), and are, therefore, entitled to offset the amount owed to the defendant by the amount overpaid. The defendant contends, in essence, that the doc-

to consider it now, because the plaintiffs have failed to carry their factual burden of establishing equitable estoppel.

[12] The plaintiffs did not specifically refer to the doctrine of equitable recoupment before the trial court or in the tax appeal proceeding. Although we are not "bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial"; Practice Book § 60-5; we have in the past addressed issues that were "functionally," albeit not specifically, raised by parties in trial court proceedings. See *Salmon* v. *Dept. of Public Health & Addiction Services*, 259 Conn. 288, 305, 788 A.2d 1199 (2002) ("[w]e are persuaded that the plaintiff functionally raised this issue in the administrative and trial court proceedings"); *State* v. *Dabkowski*, 199 Conn. 193, 198, 506 A.2d 118 (1986) (although "[t]he formulation of these positions, as now made on appeal, were not articulated in that manner in the trial court . . . [t]he claims were functionally made").

The plaintiffs have consistently requested equitable relief in the form of being permitted to file amended returns for the years 1989 and 1990, despite the passage of the statute of limitations, so that they may receive a refund or offset the deficiency now assessed by the defendant. In addition, the plaintiffs' continued references to *Federal Deposit Ins. Corp.* v. *Crystal*, 251 Conn. 748, 760–61, 741 A.2d 956 (1999), wherein a taxpayer was precluded from obtaining a refund, but was permitted to recover overpaid taxes via a credit against deficiency assessments that it had paid under protest, indicates that the concept of recoupment, if not the exact terminology, was raised before the trial court. We, therefore, conclude that the plaintiffs' claim for equitable recoupment was raised at least functionally in the trial court proceedings, so that it is preserved for our consideration in this appeal.

trine does not apply to the facts of this case because the events in question constitute more than one transaction, and thus fail to satisfy the requirements of *Bull*.[13] Our review of the doctrine of equitable recoupment leads us to conclude that, even if we were to adopt the doctrine in its broadest sense, it is not applicable to the facts of this case. Consequently, we agree with the defendant.

Ordinarily, we apply a deferential standard of review to a trial court's equitable determinations: "The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . Our standard of review is whether the trial court abused its discretion. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Fernandes* v. *Rodriguez*, 90 Conn. App. 601, 609, 879 A.2d 897, cert. denied, 275 Conn. 927, 883 A.2d 1243 (2005), cert. denied, U.S. , 126 S. Ct. 1585, 164 L. Ed. 2d 312 (2006). The defendant's argument, however, requires us first to determine whether Connecticut courts have adopted the common-law doctrine of equitable recoupment as it has been applied by the federal judiciary to tax appeals, which presents a question of law to which the plenary standard of review applies.

"Recoupment . . . refers to the defendant's right, in the same action, to cut down the plaintiff's demand, either because the plaintiff has not complied with some

---

[13] The defendant also argues that the plaintiffs' claim is barred by the statute of limitations because it is properly characterized as a claim for refund. The plaintiffs do not dispute that if they had brought an independent claim for refund, such a claim would have been barred. See General Statutes § 12-515. They argue instead that, because their claim was raised as a defense to the deficiency assessment, it is a claim for recoupment. We agree that the plaintiffs request recoupment, rather than a refund, so their claim is not barred by the statute of limitations.

cross obligation of the contract on which he or she sues or because the plaintiff has violated some legal duty in the making or performance of that contract. . . . The practice serves to avoid needless delay and unnecessary litigation" by permitting a court to examine all aspects of the transaction that is the subject of the action. (Internal quotation marks omitted.) *Premier Capital, Inc.* v. *Grossman,* 68 Conn. App. 51, 58, 789 A.2d 565, cert. denied, 260 Conn. 917, 797 A.2d 514 (2002). Although recoupment has been employed by our courts as a tool of equity despite statutes of limitations since at least the nineteenth century,[14] particularly in contract and probate disputes, no Connecticut court to date has addressed the applicability of that doctrine to tax disputes.[15]

---

[14] See *Beecher* v. *Baldwin,* 55 Conn. 419, 12 A. 401 (1887). Recoupment also has been included in our statutory scheme. See, e.g., General Statutes § 42a-3-305 (defense of recoupment available in action seeking to enforce obligation of party to pay instrument).

Although the doctrine of equitable recoupment outlined by the federal judiciary is much narrower than recoupment as it has been applied by appellate courts in our state, the principles are very similar. "The defense of recoupment has two characteristics: (1) the defense arises out of the transaction constituting the plaintiff's cause of action; and (2) it is purely defensive, used to diminish or defeat the plaintiff's cause, but not as the basis for an affirmative recovery. . . . It rests on the principle that both sides of a transaction should be settled at one time in order to prevent circuity of actions." (Citation omitted.) *Genovese* v. *J. N. Clapp Co.,* 4 Conn. App. 443, 445–46, 495 A.2d 1079 (1985).

[15] The plaintiffs contend in their brief that "[t]he principle of equitable recoupment was recognized and applied under Connecticut law" in *Federal Deposit Ins. Corp.* v. *Crystal,* 251 Conn. 748, 760–61, 741 A.2d 956 (1999). We disagree. The primary issue in *Federal Deposit Ins. Corp.* was whether the trial court had jurisdiction to consider the claims of the plaintiff, the receiver of two insolvent banks, challenging certain tax deficiency assessments, when the banks had not filed amended tax returns and claims for refunds. The decision addressed the question of "whether the [receiver] may utilize the same legal theory that would have underlain such a claim for refund, not for the purpose of seeking a refund of the taxes that the banks paid, but in order to offset additional taxes in the form of deficiency assessments imposed by the commissioner." Id. This court held that, although the receiver had forfeited its right to seek a refund due to its failure to comply with time limits for such a claim, it had a right to regain the

The equitable recoupment doctrine is a form of relief developed by the federal courts and adopted by some state courts. Equitable recoupment is a narrow exception to the legislative policy of barring claims in tax matters by statutes of limitations. It was first applied by the United States Supreme Court in *Bull* v. *United States*, supra, 295 U.S. 247, a case involving a probated estate. In *Bull*, the taxpayer had paid estate taxes on the decedent's interest in a partnership, and later was assessed a deficiency by the federal government on the basis of its determination that the money should have been classified and taxed as income. Id., 251–52. The Supreme Court, by applying the doctrine of equitable recoupment, permitted the taxpayer to use its previously paid taxes to offset the assessed deficiency despite the passage of the statute of limitations on the taxpayer's claim for a refund. Id., 263. The court chose to exercise its equitable powers because the retention by the government of money that it is not entitled to is "against morality and conscience"; id., 260; as well as "immoral and amounts in law to a fraud on the taxpayer's rights." Id., 261.

Subsequent Supreme Court cases summarize the doctrine as applicable in situations in which the taxing authority has applied two inconsistent tax theories to the same transaction, and that inconsistency has been challenged as a defense to a timely proceeding.[16] *United*

---

additional taxes imposed by deficiency assessments that the banks had paid under protest. Id., 759–60. Although the remedy fashioned was similar to an equitable recoupment remedy, *Federal Deposit Ins. Corp.* was not a case about two inconsistent taxes being applied to the same transaction. Rather, the decision was based on the scope of the trial court's de novo review of the receiver's tax appeal under General Statutes § 12-237, which outlined the tax appeal process. Although this court recognized the broad equitable powers that may be exercised by a court hearing a de novo tax appeal, the plaintiffs' assertion that we adopted the doctrine of equitable recoupment in *Federal Deposit Ins. Corp.* is inaccurate.

[16] The most recent United States Supreme Court decision on the subject defines recoupment as "the setting off against asserted liability of a counterclaim arising out of the same transaction. Recoupment claims are generally

*States* v. *Dalm*, 494 U.S. 596, 608, 110 S. Ct. 1361, 108 L. Ed. 2d 548 (1990) ("a party litigating a tax claim in a timely proceeding may, in that proceeding, seek recoupment of a related, and inconsistent, but now time-barred tax claim relating to the same transaction"); *Rothensies* v. *Electric Storage Battery Co.*, 329 U.S. 296, 299, 67 S. Ct. 271, 91 L. Ed. 296 (1946) ("recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded" [internal quotation marks omitted]). These cases also make it clear that the government, as well as taxpayers, may use equitable recoupment as a defense; *Stone* v. *White*, 301 U.S. 532, 539, 57 S. Ct. 851, 81 L. Ed. 1265 (1937); and that the taxpayer may be treated as a defendant even though he was the party who filed the action. *United States* v. *Dalm*, supra, 617 ("in a refund action based on the multiple and inconsistent taxation of a single transaction, the taxpayer is to be treated as though she were the defendant even though she is actually the plaintiff").

Thus, in the federal courts, recoupment "has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." *Rothensies* v. *Electric Storage Battery Co.*, supra, 329 U.S. 299. The doctrine "applies only in cases that satisfy three elements. First, a single transaction must be the taxable event to be considered in recoupment. Second, the single transaction must be subject to two taxes based upon inconsistent legal theories. Finally, the statute of limitations must bar recoupment, while either

not barred by a statute of limitations so long as the main action is timely." *Reiter* v. *Cooper*, 507 U.S. 258, 264, 113 S. Ct. 1213, 122 L. Ed. 2d 604 (1993) (applying principles of *Bull* to unreasonable rate claim under Interstate Commerce Act).

the government's asserted deficiency or the taxpayer's claim for a refund must be timely." *Catalano* v. *Commissioner of Internal Revenue*, 240 F.3d 842, 844 (9th Cir. 2001); see also *Rothensies* v. *Electric Storage Battery Co.*, supra, 299–300; *Kolom* v. *United States*, 791 F.2d 762, 767 (9th Cir. 1986).[17]

Several of our sister states have adopted the federal judiciary's doctrine of equitable recoupment. See *Dept. of State Revenue* v. *Smith*, 473 N.E.2d 611, 615 (Ind. 1985); *Superior Air Products International, Inc.* v. *Director, Division of Taxation*, 9 N.J. Tax 463, 470, 476 (1988), aff'd per curiam, 10 N.J. Tax 238 (App. Div. 1988); *Vivigen, Inc.* v. *Minzner*, 117 N.M. 224, 231, 870 P.2d 1382 (1994); *National Cash Register Co.* v. *Joseph*, 299 N.Y. 200, 203, 86 N.E.2d 561 (1949); *Estate of Kasishke* v. *Tax Commission*, 541 P.2d 848, 852–53 (Okla. 1975); *Allied Timber Co.* v. *Dept. of Revenue*, 296 Or. 412, 415, 677 P.2d 33 (1984); *American Motors Corp.* v. *Dept. of Revenue*, 64 Wis. 2d 337, 351–53, 219 N.W.2d 300 (1974).

---

[17] Relying on *Stone* v. *White*, supra, 301 U.S. 537–38, and *United States* v. *Dalm*, supra, 494 U.S. 608, several federal circuits also distinctly require an identity of interest between the parties paying the duplicative tax. See, e.g., *Rogers* v. *United States*, 281 F.3d 1108, 1129 (10th Cir. 2002) (declining to apply equitable recoupment because "equitable concerns suggest that the doctrine should not be applied in situations involving two unrelated taxpayers"); *Parker* v. *United States*, 110 F.3d 678, 683 (9th Cir. 1997) ("if the subject transaction involves two or more taxpayers, equitable recoupment will not be available unless a sufficient identity of interest exists so that the taxpayers should, in equity, be treated as a 'single taxpayer' "); *Estate of Vitt* v. *United States*, 706 F.2d 871, 875 n.3 (8th Cir. 1983) ("[a]bsence of an identity of interest may result in the denial of recoupment"); see also *Teco Investments, Inc.* v. *Taxation & Revenue Dept.*, 125 N.M. 103, 106, 957 P.2d 532 (1998) (including in New Mexico's test requirement of "a strict identity of interest"). Some courts also consider, as a separate requirement, the need for the court in which the recoupment claim is heard to independently have jurisdiction to adjudicate the claim, so that the equitable recoupment claim is not the sole basis of jurisdiction. See, e.g., *Estate of Branson* v. *Commissioner of Internal Revenue*, 264 F.3d 904, 910 (9th Cir. 2001), cert. denied, 535 U.S. 927, 122 S. Ct. 1296, 152 L. Ed. 2d 209 (2002).

Other state courts have declined to apply the doctrine of equitable recoupment to the facts of cases before them, but seemingly have left open the question of whether their state recognizes the doctrine. See *Independent Iron Works, Inc.* v. *State Board of Equalization*, 167 Cal. App. 2d 318, 326, 334 P.2d 236 (1959) ("For the purposes of this opinion, but without deciding the issue, it may be assumed that the doctrine of equitable recoupment exists in this state. Such an assumption would not assist the appellant, because, under the facts of this case, the doctrine, even in its broadest application, is not applicable."); *Harman's of Idaho, Inc.* v. *State Tax Commission*, 114 Idaho 740, 742, 760 P.2d 1156 (1988) ("The taxpayer contends that this is an appropriate case for the application of the doctrine of equitable recoupment. This is a case of first impression for the application of this doctrine by this [c]ourt. Without determining whether equitable recoupment will be applicable in other cases in this state, we hold that it is not appropriate in this case."); *American Life & Accident Ins. Co. of Kentucky, Inc.* v. *Revenue Cabinet*, 173 S.W.3d 910, 915 (Ky. App. 2004) ("while it is arguable that Kentucky has implicitly recognized equitable recoupment . . . it has also been held that if equitable relief is not provided for by statute then it is unavailable" [citation omitted]), review denied, 2005 Ky. LEXIS 320 (October 12, 2005); *May Dept. Stores Co.* v. *Pittsburgh*, 31 Pa. Commw. 398, 406, 376 A.2d 309 (1977) (describing equitable recoupment as "a creature of the federal judiciary" but concluding same transaction requirement not met). At least one state has specifically declined to adopt the doctrine of equitable recoupment. See *General Motors Corp.* v. *Limbach*, 67 Ohio St. 3d 90, 92–93, 616 N.E.2d 204 (1993) (rejecting doctrine based on courts' lack of jurisdiction to grant equitable remedies in tax cases).

In the present case, we need not decide whether to adopt the doctrine of equitable recoupment, because it

applies "only where the [g]overnment has taxed a *single transaction, item, or taxable event* under two inconsistent theories." (Emphasis added.) *United States* v. *Dalm,* supra, 494 U.S. 605 n.5. The threshold issue with respect to whether the doctrine of equitable recoupment is applicable to the facts of this case is, therefore, whether the events in question constitute more than one taxable event. The plaintiffs claim that the taxable event in question is the treatment of the net operating losses, which necessarily affects more than one tax year. The defendant argues in response that "the plaintiffs are attempting to offset [a] 1995 and 1996 assessment with a claim that relates to 1990 and not to the 1995 and 1996 tax years." Under the defendant's reasoning, the taxable event is the imposition of the income tax.[18] Because we agree with the defendant, we leave for another day the question of whether to adopt the doctrine of equitable recoupment.

There are two approaches to defining "transaction" in the equitable recoupment case law. The first is followed by the majority of state jurisdictions that have adopted equitable recoupment and is modeled on the federal doctrine, which requires that the same transaction, literally, must be the basis for both the claim for refund and the claim of deficiency. See, e.g., *United States* v. *Dalm,* supra, 494 U.S. 605–606; *Rothensies* v. *Electric Storage Battery Co.,* supra, 329 U.S. 300–301; *Boyle* v. *United States,* 355 F.2d 233, 236 (3d Cir. 1965); *Superior Air Products International, Inc.* v. *Director, Division of Taxation,* supra, 9 N.J. Tax 474–75; *Vivigen,*

---

[18] The defendant argues primarily that the requirements of the doctrine are not met because the plaintiffs are "attempt[ing] to dredge up claims" from years other than those that were audited by the defendant. Although the defendant argues against applying principles of equitable recoupment because the plaintiffs' claim for a refund involves multiple taxable years, we conclude that the defendant's argument is more appropriately framed as an argument that the plaintiffs' claim for refund is based on two transactions, or tax years, that are separate from the transactions, or tax years, on which the defendant based its deficiency assessments.

*Inc.* v. *Minzner*, supra, 117 N.M. 231; see also *Twitchco, Inc.* v. *United States*, 348 F. Sup. 330, 336 (N.D. Ala. 1972) ("the existing state of the law requires that the single transaction test be used to narrowly confine the doctrine" of equitable recoupment). We note that a minority of state courts, including the Wisconsin Supreme Court, which has had the opportunity to examine the doctrine of equitable recoupment on several occasions, have adopted a broader definition of " 'same transaction,' " so that the term encompasses "any transaction in the tax period involved in either a claim by the taxpayer for refund or by the state for additional assessment . . . ."[19] *American Motors Corp.* v. *Dept. of Revenue*, supra, 64 Wis. 2d 353; see also *Estate of Kasishke* v. *Tax Commission*, supra, 541 P.2d 853 (concluding, on basis of reasoning of *American Motors*

---

[19] This broadened definition originated in a New York case, *National Cash Register Co.* v. *Joseph*, supra, 299 N.Y. 200. In *National Cash Register Co.*, a dispute over the amount of city sales tax a company owed arose when the city issued a deficiency determination in 1945 against the company for the years 1935 to 1940. The company responded with a claim for refund or offset based on overpayments by the company in the years 1936 to 1940. Id., 202. Although the claims would have been barred by the statute of limitations if the company had brought an independent refund action, the court allowed the company to setoff against the deficiency the amount it had overpaid because the city had opened the question of the company's sales tax liability in the years at issue. Id., 203. The opinion is very brief and does not provide the details of the transactions at issue, but is often cited in other cases and characterized as an expansion of the doctrine of equitable recoupment because it seemingly defines transaction as an entire year or tax period. See, e.g., *Superior Air Products International, Inc.* v. *Director, Division of Taxation*, supra, 9 N.J. Tax 474; *Vivigen, Inc.* v. *Minzner*, supra, 117 N.M. 230; *Dept. of Revenue* v. *Van Engel*, supra, 230 Wis. 2d 615–16. We note that our reading of *National Cash Register Co.* does not lead us to conclude that the New York court did, in fact, expand the doctrine, because it specifically stated: "Here the city reopened the matter of the sales tax liability of the vendor for the period September 1, 1935, to December 31, 1940, and assessed a tax deficiency against it for that period. The vendor, as we think, was thereby given an equitable right to plead against the city *a recoupment claim for taxes of the same type which the vendor (as it alleges) had erroneously paid to the comptroller in the same period.*" (Emphasis added.) *National Cash Register Co.* v. *Joseph*, supra, 203. Nevertheless, the case has come to represent a broadened definition of "same transaction" in the relevant case law.

*Corp.*, that payment of estate tax constitutes single transaction); *Dept. of Revenue* v. *Van Engel*, 230 Wis. 2d 607, 614–16, 601 N.W.2d 830 (acknowledging Wisconsin's adoption of broadened definition of same transaction), review denied, 231 Wis. 2d 374, 607 N.W.2d 290 (1999). Under either definition of transaction, however, the question of whether the net operating losses in the present case constitute more than one taxable event is unclear.

Our research has revealed little case law on this specific question. No federal court has determined squarely whether treatment of net operating losses over a period of more than one tax year meets the same transaction requirement.[20] The two state appellate level courts that directly have addressed this issue support the defen-

---

[20] Several federal courts have alluded to the issue, however, and have used language that would support the defendant's position. In *United States* v. *Koss*, 99-2 U.S. Tax Cases (CCH) ¶ 50,850, 89,810 (E.D. Pa. 1999), aff'd, 250 F.3d 736 (3d Cir. 2001), for instance, the District Court declined to allow the plaintiff to carry back a net operating loss incurred in 1977, when certain stock he owned became valueless, to 1974, when he had acquired the stock, because the facts did not demonstrate the plaintiff had been subjected to inconsistent theories of taxation. The court noted in dicta that even if it had found that the inconsistent theories prong of the equitable recoupment test had been met, it would not have applied the doctrine because "[c]ourts should not lump together related, but nonetheless separate transactions so that the facts of a case can be viewed as one transaction as a whole." (Internal quotation marks omitted.) Id., 89,814 n.4, quoting *Parker* v. *United States*, 110 F.3d 678, 684 (9th Cir. 1997). As the United States Court of Appeals for the Ninth Circuit correctly noted in *Parker*, in lumping together such transactions, "a court risks bringing about the all but intolerable circumstance of having a tax system under which there would never come a day of final settlement." (Internal quotation marks omitted.) *Parker* v. *United States*, supra, 684.

One District Court has indicated, in dicta, that it may classify treatment of net operating losses as a taxable event. See *Lockheed Sanders, Inc.* v. *United States*, 862 F. Sup. 677, 683 (D.N.H. 1994) (listing as separate taxable events "the ability to utilize previous net operating loss deductions, credits and interest to offset income derived in other years"). In *Lockheed Sanders, Inc.*, however, the court also referred to net operating loss "carrybacks and carryforwards" as "superseding events giving rise to the refund claim"; id., 682; which does not seem to support the theory of net operating losses as a taxable event. The court declined to apply equitable recoupment on other grounds, so it did not reach the issue before us in the present case.

dant's claim that the transaction in question is the imposition of the income tax, not the treatment of the net operating losses.

In *Harman's of Idaho, Inc.* v. *State Tax Commission,* supra, 114 Idaho 741, the defendant tax commission assessed a tax deficiency after it determined that the taxpayer improperly had carried forward certain net operating losses without first carrying them back for three years, as required by the applicable statute. The taxpayer claimed that the amount that it had overpaid in the years when it should have carried back the losses, should have been used to offset the subsequent deficiency assessment. Id. The Idaho Supreme Court determined that the taxpayer's claim for refund was barred by the three year statute of limitations, which was specifically targeted to claims for credit or refund relating to overpayment attributable to a net operating loss carryback. Id., 742. The court rejected the claim that the deficiency assessment reopened the time period for making a refund claim relating to the years in which the taxpayer should have claimed the net operating losses. Id., 741–42. The court also concluded that the doctrine of equitable recoupment did not apply because "[t]he [net operating losses] are not a taxable event, but merely the basis for deductions. The [net operating losses] do not generate a tax, but are only a means of avoiding the payment of some tax. The [net operating losses] were not subjected to two taxes based on inconsistent theories." Id., 743.

Similarly, in *Aetna Casualty & Surety Co.* v. *Tax Appeals Tribunal,* 214 App. Div. 2d 238, 242–43, 633 N.Y.S.2d 226 (1995), appeal denied, 87 N.Y.2d 811, 666 N.E.2d 1058, 644 N.Y.S.2d 144 (1996), the court declined to apply principles of equitable recoupment to a company's attempt to offset part of a deficiency assessed against it for 1986 by the amount that it had overpaid in 1978, due to an error in its utilization of net operating losses. The New York court stated that the doctrine of

equitable recoupment could not be applied because "that doctrine only applies when the overpayment to be recouped was made during the period under review, and thus can be considered part of the same 'transaction . . . .' " Id.

We find the reasoning of the Idaho and New York courts with regard to the definition of transaction convincing. Net operating losses are not, as the Idaho court noted, "a taxable event, but merely the basis for deductions." *Harman's of Idaho, Inc.* v. *State Tax Commission,* supra, 114 Idaho 743. We, therefore, conclude that, even if we were to assume, without deciding, that the doctrine of equitable recoupment should be adopted, it is not applicable to the present case because the plaintiffs failed to satisfy the "same transaction" requirement under even the broader definition of transaction applied by a minority of courts.

We note that, were we to hold for the plaintiffs, we would in effect be endorsing an even broader definition of transaction than that adopted by the minority of state courts. Such a result would all but eviscerate the statute of limitations on refund claims and the finality of tax settlements in our state. As the United States Supreme Court stated in *Rothensies*: "It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the [g]overnment to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence, a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy." *Rothensies* v. *Electric Storage Battery Co.,* supra, 329 U.S. 301.

The court also recognized that "[a]s statutes of limitation are applied in the field of taxation, the taxpayer

sometimes gets advantages and at other times the [g]overnment gets them. Both hardships to the taxpayers and losses to the revenues may be pointed out. They tempt the equity-minded judge to seek for ways of relief in individual cases.

"But if we should approve a doctrine of recoupment of the breadth here applied we would seriously undermine the statute of limitations in tax matters. In many, if not most, cases of asserted deficiency the items which occasion it relate to past years closed by statute, at least as closely as does the item involved here. . . . The same is true of items which form the basis of refund claims. Every assessment of deficiency and each claim for refund would invite a search of the taxpayer's entire tax history for items to recoup. . . .

"We cannot approve such encroachments on the policy of the statute out of consideration for a taxpayer who for many years failed to file or prosecute its refund claim. If there are to be exceptions to the statute of limitations, it is for Congress rather than for the courts to create and limit them." (Citations omitted.) Id., 302–303. Adoption of a more expansive definition of transaction also would contravene our state's policy of encouraging finality of tax decisions, which ultimately serves both the taxpayer and the state. See, e.g., *Chatterjee* v. *Commissioner of Revenue Services*, 277 Conn. 681, 696, 894 A.2d 919 (2006) (income tax scheme's "three year statute of limitations balances the state's important interest in financial stability with the plaintiffs' interest in recouping their allegedly improper payment of taxes"); see also *National CSS, Inc.* v. *Stamford*, 195 Conn. 587, 597–98, 489 A.2d 1034 (1985) (noting with regard to one year statute of limitations for seeking refund of excess real property tax payments that "[p]ublic policy requires . . . that this court not permit taxes collected or paid to be the subject of perpetual litigation, at any time, to suit the convenience

of the taxpayer"). Thus, in the context of net operating losses, which, as the plaintiffs note, necessarily affect multiple years of taxable income, the benefits of a narrower definition of "same transaction" are particularly significant. Our conclusion may not comport with the *plaintiffs'* notion of fairness and equity, but the "application of the statute of limitations in tax matters is often not 'fair.' Rather, it is applied for salutary reasons of predictability and repose . . . ." *Superior Air Products International, Inc.* v. *Director, Division of Taxation,* supra, 9 N.J. Tax 477.

The judgment is affirmed.

In this opinion the other justices concurred.