******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# L. LEE WHITNUM BAKER *v.* SECRETARY OF THE STATE
## (SC 21049)

McDonald, Alexander and Dannehy, Js.

*Syllabus*

The plaintiff filed the present action with this court pursuant to statute (§ 9-323), challenging the decision of the defendant secretary of the state to reject the plaintiff's registration as a write-in candidate in connection with the November, 2024 election for the office of United States representative for the Third Congressional District of Connecticut on the ground that it was untimely filed in violation of the statute ((Supp. 2024) § 9-373a) governing the registration of write-in candidates. The plaintiff sought an order directing the defendant to accept her registration, claiming that her filing was untimely because she had followed certain purportedly erroneous guidance from the defendant's office that reflected the filing deadline contained in an outdated version of § 9-373a, rather than the deadline set forth in the current version of § 9-373a. *Held*:

This case was not moot because, even though it was not heard until after election day and the statutory filing deadline had passed, practical relief was still available, insofar as allowing the plaintiff to register as a write-in candidate would, at the very least, have the effect of validating those write-in votes that may already have been cast for her, and, in the event that there was a sufficient number of write-in votes to cast serious doubt on the election's reliability, a new election could serve as a potential remedy.

The plaintiff was aggrieved by "a ruling of an election official" for purposes of establishing this court's jurisdiction under § 9-323 when the defendant declined to accept the plaintiff's untimely registration form, there having been a colorable claim that the plaintiff's untimely filing was the result of erroneous information communicated by the defendant's office.

This court assumed without deciding that Connecticut courts have the authority to exercise their equitable powers to excuse a candidate's failure to comply with a mandatory filing deadline, such as the one set forth in § 9-373a, when such a failure to comply has been caused by the action of an election official.

Nevertheless, the plaintiff failed to prove that she was entitled to relief under the doctrine of equitable estoppel because, although the defendant erroneously quoted an outdated version of § 9-373a in a cover letter that she provided to the plaintiff, both the cover letter and the write-in candidate registration form itself clearly and unambiguously provided the correct deadline, and the plaintiff failed to exercise due diligence in resolving the apparent discrepancy between the quote from the outdated version of the

statute and correct deadline that was prominently stated in the cover letter and on the registration form.

Heard November 7—officially released November 18, 2024*

*Procedural History*

Action seeking an order directing the defendant to accept the plaintiff's registration as a write-in candidate for the office of United States representative for the Third Congressional District of Connecticut for the 2024 general election, brought, pursuant to General Statutes § 9-323, to a panel of this court, *McDonald*, *Alexander* and *Dannehy*, *Js.*, which conducted a hearing on the plaintiff's complaint. *Judgment for the defendant.*

*L. Lee Whitnum Baker*, self-represented, the plaintiff.

*Benjamin Abrams*, assistant attorney general, with whom was *Emily Adams Gait*, assistant attorney general, for the defendant.

*Opinion*

PER CURIAM. This is an original jurisdiction proceeding before a panel of this court pursuant to General Statutes § 9-323,[1] in which the plaintiff, L. Lee Whitnum

---

* November 18, 2024, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] This action, brought directly to a judge of the Supreme Court pursuant to § 9-323 to challenge the ruling of an election official in connection with a federal election, was heard by a panel of judges of the Supreme Court, rather than a single judge, notwithstanding the filing of the complaint prior to election day. The relevant statutory language provides that § 9-323 matters brought "prior to such election" are decided by a single judge, and complaints "made subsequent to the election" are decided by a panel of three judges. General Statutes § 9-323; see *Fay* v. *Merrill*, 336 Conn. 432, 442 n.14, 246 A.3d 970 (2020) (noting that this court dismissed motion for reconsideration en banc in § 9-323 matter because "plain language of § 9-323 . . . contemplates review by more than one [judge] of the Supreme Court only in postelection matters" and does not provide for further review en banc of single judge decision). Because § 9-323 does not specifically contemplate early voting, as recently implemented by General Statutes (Supp. 2024) § 9-163aa, we look to the statutory definition of "election," which is "any electors' meeting at which the electors choose public officials by use of voting tabulators or by paper ballots as provided in section 9-272 . . . ." General Statutes § 9-1 (d). In the absence of specific guidance from a statutory amendment

Baker, sought an emergency hearing to challenge a ruling of an election official, the defendant, the secretary of the state, in connection with an election for federal office. The plaintiff challenges the defendant's decision to reject her registration as a write-in candidate for the office of United States representative for the Third Congressional District of Connecticut on the ground that it was untimely filed in violation of General Statutes (Supp. 2024) § 9-373a,[2] which, in connection with General Statutes § 9-265, governs write-in candidacies. In this action, the plaintiff seeks an injunction directing the defendant to accept her registration as a write-in candidate under § 9-373a. She claims that her untimely filing was the result of following guidance from a form cover letter promulgated by the defendant's office that did not update its block quotation of § 9-373a to reflect the earlier filing deadlines contained in the current statutory revision, which was amended in 2023 to accommodate the new early voting program under General Statutes (Supp. 2024) § 9-163aa. In response, the defendant asks us to dismiss this action for lack of subject matter jurisdiction under § 9-323.

We held a hearing on the plaintiff's complaint on Thursday, November 7, 2024. After that hearing, we concluded that we have subject matter jurisdiction over this proceeding and reserved judgment on the merits. We now conclude that this case does not present the type of "extraordinary circumstance," as contemplated by *Butts* v. *Bysiewicz*, 298 Conn. 665, 676 n.7, 5 A.3d 932 (2010), that would warrant equitable relief from the operation of a mandatory statutory provision based on erroneous information given to the plaintiff by an elec-

that addresses early voting in this context, we construe the definition of the word "election" broadly and understand § 9-323 to require assignment to a panel of three judges when a complaint is made after the commencement of early voting.

[2] Hereinafter, unless otherwise indicated, all references to § 9-373a in this opinion are to the version in the 2024 supplement to the General Statutes.

tion official. The plaintiff has failed to prove entitlement to relief under the doctrine of equitable estoppel because (1) notwithstanding the defendant's erroneous quotation of an outdated version of § 9-373a in the cover letter provided to the plaintiff, both the cover letter and the registration form itself clearly and unambiguously provided the correct deadline, and (2) the plaintiff failed to exercise any due diligence in resolving the apparent inconsistency. Accordingly, we deny the plaintiff's request for injunctive relief and render judgment for the defendant.

The record reveals the following undisputed facts.[3] In connection with her statutory role as the chief elections officer for the state of Connecticut, the defendant collects registrations of write-in candidates that are filed pursuant to § 9-373a and publishes informational material on her website about how to become a write-in candidate, along with the necessary registration form, promulgated as form ED-622a (registration form). See General Statutes § 9-265 (a) (write-in vote will only be "counted and recorded" for candidate who has registered as write-in candidate). Once all registrations are received in accordance with the deadline set by § 9-373a, the defendant compiles the names of the eligible write-in candidates for offices in each town and submits them to the various town clerks; those lists are kept available at the polls for reference, upon request, if an elector has a question about which candidates are eligible to write in on a ballot.

---

[3] Representations made by the parties at the hearing on the plaintiff's complaint confirmed that the facts, which are revealed in documentary exhibits and the affidavit of Attorney Gabe Rosenberg, the defendant's general counsel and chief of staff, are indeed undisputed. Although a proceeding under § 9-323 contemplates a trial-like proceeding to find any disputed facts; see, e.g., *In re Election of the United States Representative for Second Congressional District*, 231 Conn. 602, 610–11, 653 A.2d 79 (1994); insofar as the operative facts in the present case are undisputed, we render judgment as a matter of law without the need for a trial. Cf. Practice Book § 17-45 (governing proceedings on motion for summary judgment).

In August, 2024, the plaintiff went to the defendant's office and requested a registration form for her write-in candidacy for the United States House of representatives for the Third Congressional District in the November 5, 2024 election. Violet Dussault, who is a staff attorney for the defendant, spoke with the plaintiff and provided her with the registration form, as revised in August, 2024. The registration form cited § 9-373a, documented the candidate's consent "to being a write-in candidate for the office indicated [on the form] to be contested at such election," and indicated that it "must be filed with the [defendant] not earlier than August 7, 2024 and not later than 4:00 p.m. on October 7, 2024, or the registration will be void." (Emphasis in original.)

The registration form was accompanied by a cover letter from the defendant's Elections Services Division, which stated: "It is imperative that you fill out this form completely and follow the instructions. *You should also carefully peruse . . . § 9-373a, below,* which is the section of the state statutes relating to write-in candidacies. You must file the enclosed form with this office in order to register your write-in candidacy, and the form may not be filed with this office earlier than August 7, 2024 and *not later than 4:00 p.m. on October 7, 2024* or the registration will be *void.*" (Emphasis altered.) The cover letter also reproduced § 9-373a in its entirety and stated with respect to the filing deadline: "The registration shall be filed with the [defendant] not more than ninety days prior to the election at which the office is to be filled *and not later than four o'clock p.m. on the fourteenth day preceding the election,* or the registration shall be void." (Emphasis added.) The quoted language in the cover letter does not reflect the current revision of § 9-373a, which the legislature amended in 2023 when it established the early voting program. See Public Acts 2023, No. 23-5, § 9. That section now provides in relevant part: "The registration shall be filed

with the [defendant] not more than ninety days prior to the election at which the office is to be filled *and not later than four o'clock p.m. on the fourteenth day preceding the commencement of the period of early voting at the election*, or the registration shall be void." (Emphasis added.) General Statutes (Supp. 2024) § 9-373a. Nevertheless, the October 7, 2024 deadline is consistent with the commencement of the early voting period on October 21, 2024. See General Statutes (Supp. 2024) § 9-163aa (a).

On October 15, 2024, the plaintiff went to the defendant's office to file the registration form, which she believed was timely under the version of § 9-373a quoted in the cover letter, and of which she had made a "mental note" in believing that the deadline was October 23, 2024. The plaintiff had also handwritten "Oct 22" on her copy of the cover letter. Taffy Womack, one of the defendant's staff members, rejected the registration form as untimely, explaining that § 9-373a had been amended to reflect early voting, with a deadline for the 2024 election of October 7, 2024, and gave the plaintiff a copy of the revised statute.[4] Womack informed the plaintiff that, if the defendant's office "made an exception for the plaintiff . . . the others who were also late would have to be included . . . ." Indeed, twenty-nine write-in candidates participated in the November, 2024 general election and sought a variety of offices, including president of the United States, United States senator, United States representative in three of the five congressional districts, and a variety of state legislative positions. The only write-in candidacy that was rejected as untimely was that of the plaintiff.

[4] After the error in this case was discovered, the defendant subsequently removed the outdated materials from her website so that they could be corrected. At the hearing before this court, the defendant's counsel candidly expressed regret for the confusion and eventual litigation sown by this unfortunate error.

After her attempts to obtain relief in federal court and the Superior Court were dismissed for lack of jurisdiction, the plaintiff brought this action pursuant to § 9-323, seeking an order directing the defendant to accept her registration form. She argues that she is entitled to relief from the October 7, 2024 deadline because of the "confusion" occasioned when she was "given wrong information by someone on the [defendant's] staff . . . ." In response, the state argues otherwise and contends that we lack subject matter jurisdiction under § 9-323.

I

Because subject matter jurisdiction is a threshold matter; see, e.g., *In re Ava W.*, 336 Conn. 545, 558, 248 A.3d 675 (2020); we turn first to the defendant's arguments that we lack jurisdiction because (1) this case is moot given that election day has passed, and (2) the plaintiff is not "aggrieved by [a] ruling of [an] election official" for purposes of § 9-323. In considering the defendant's jurisdictional arguments, we are guided by the "strong presumption in favor of jurisdiction," which is "founded on this state's clearly and repeatedly . . . expressed . . . policy preference to bring about a [resolution] on the merits of a dispute whenever possible and to secure for the litigant his or her day in court." (Internal quotation marks omitted.) *Markley* v. *State Elections Enforcement Commission*, 339 Conn. 96, 111, 259 A.3d 1064 (2021). In considering whether facts alleged establish a predicate for the exercise of our jurisdiction, as in other contexts, we look only to whether the claim is "colorable," namely, "one that is superficially well founded but that may ultimately be deemed invalid . . . . For a claim to be colorable, the defendant need not convince the . . . court that he necessarily will prevail; he must demonstrate simply that he *might* prevail." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Sena* v. *American Medical Response of Connecticut, Inc.*, 333

Conn. 30, 45, 213 A.3d 1110 (2019). "The ultimate legal correctness of the claim is not relevant to our jurisdictional analysis. This is consistent with the well established rule that [t]he jurisdictional and merits inquiries are separate . . . ." (Internal quotation marks omitted.) *State* v. *Ward*, 341 Conn. 142, 153, 266 A.3d 807 (2021).

With respect to mootness, the defendant argues that no practical relief is available because this case was not heard until after election day, and after the October 7, 2024 deadline for the defendant to compile names of registered write-in candidates and to provide them to town clerks for the information of electors. We disagree.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction." (Internal quotation marks omitted.) *In re Ava W.*, supra, 336 Conn. 558. "A case is considered moot if [the trial] court cannot grant the appellant any practical relief through its disposition of the merits. . . . Mootness presents a circumstance [in which] the issue before the court has been resolved or had lost its significance because [of] a change in the condition of affairs between the parties." (Citation omitted; internal quotation marks omitted.) Id. "[T]he proper inquiry with regard to mootness is not whether some change in circumstances has occurred after the claim or cause of action is asserted that forecloses any chance of success on the merits but, rather, whether that change would prevent the court from granting any and all practical relief *even assuming that the proponent is able to prevail on the merits*, *no matter how unlikely*." (Emphasis in original; internal quotation marks omitted.) *M&T Bank* v. *Lewis*, 349 Conn. 9, 23–24, 312 A.3d 1040 (2024).

We are not persuaded by the defendant's mootness argument. Allowing the plaintiff to register as a write-

in candidate would, at the very least, have the effect of validating those write-in votes that may already have been cast for her, which only "shall be counted and recorded" for "a person who has registered as a write-in candidate for the office pursuant to . . . [§] 9-373a . . . ." General Statutes § 9-265 (a). Furthermore, in the event that there was a sufficient number of write-in votes to put the election's reliability into serious doubt, a new election is an available—albeit sparingly and cautiously ordered—remedy under § 9-323. See *Keeley* v. *Ayala*, 328 Conn. 393, 405–406, 179 A.3d 1249 (2018).

We next turn to whether the plaintiff is "aggrieved by a ruling of an election official." The phrase "ruling of [an] election official," as used in § 9-323 and in numerous other election statutes; see, e.g., General Statutes § 9-328; General Statutes § 9-329a; has been construed "to mean some act or conduct by the [election] official that . . . interprets some statute, regulation or other authoritative legal requirement, applicable to the election process. . . . [This court] has held that this test is broad enough to include conduct that comes within the scope of a *mandatory statute* governing the election process, even if the election official has not issued a ruling in any formal sense. . . . Thus, [w]hen an election statute mandates certain procedures, and the election official has failed to apply or to follow those procedures, such conduct implicitly constitutes an incorrect interpretation of the requirements of the statute and, therefore, is a ruling." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Wrotnowski* v. *Bysiewicz*, 289 Conn. 522, 526–27, 958 A.2d 709 (2008); see also *Caruso* v. *Bridgeport*, 285 Conn. 618, 647, 941 A.2d 266 (2008); *Bortner* v. *Woodbridge*, 250 Conn. 241, 268, 736 A.2d 104 (1999).

We disagree with the defendant's argument that the plaintiff is not aggrieved under the statute because the defendant followed the law in refusing to accept the

untimely registration form. That argument is circular in the factual context of this case, namely, that the plaintiff's claim is that the untimely filing was the result of her receiving incorrect information about the write-in process that was promulgated by the defendant's office. Although § 9-323 may not be used to challenge the underlying election laws and merely considers whether the election official's ruling complied with those laws; see *Fay* v. *Merrill*, 336 Conn. 432, 449 n.19, 246 A.3d 970 (2020); see also *Wrinn* v. *Dunleavy*, 186 Conn. 125, 134 n.10, 440 A.2d 261 (1982); the gravamen of the plaintiff's complaint is that the defendant misapplied existing law by providing an erroneous quotation of the statute in the cover letter and, then, by refusing to accept the registration form in light of the confusion sown by that erroneous quotation. By way of illustration, in a challenge to expanded absentee balloting during the COVID-19 pandemic, Chief Justice Robinson recently observed that "the election contest statutes, including § 9-323, do not confer jurisdiction over . . . fundamental constitutional challenges to Executive Order No. 7QQ, which the defendant—acting as an elections official—implemented via the application" but that "the court would . . . have had jurisdiction over the plaintiffs' claim that the application is not itself faithful to Executive Order No. 7QQ." *Fay* v. *Merrill*, supra, 450 n.19; cf. *Arciniega* v. *Feliciano*, 329 Conn. 293, 309–10, 184 A.3d 1202 (2018) (acceptance of allegedly defective candidate consent forms was not ruling of election official when statutory scheme did not require registrar to consider accuracy or validity of their content). The plaintiff's allegations in this case squarely concern the application of § 9-373a. Thus, guided by the strong presumption in favor of jurisdiction, and given that a colorable claim that the plaintiff's untimely filing of the registration form was the result of erroneous information communicated by the defendant's office,

we conclude that the defendant's refusal to accept the untimely registration form rendered the plaintiff aggrieved by a ruling of an election official for purposes of establishing this court's jurisdiction under § 9-323.

## II

We now turn to the merits of the plaintiff's claim. The core issue in this case is whether a court has equitable discretion to provide a prospective write-in candidate with relief from a mandatory statutory provision, when her noncompliance resulted from erroneous guidance given by the election official charged with the administration of the statutory scheme. The governing statutory provision in this case is § 9-373a, which provides in relevant part: "*The registration shall be filed with the* [*secretary*] not more than ninety days prior to the election at which the office is to be filled and not later than four o'clock p.m. on the fourteenth day preceding the commencement of the period of early voting at the election, *or the registration shall be void. . . .*" (Emphasis added.)

There is no dispute that the language of § 9-373a is mandatory in nature and plainly and unambiguously affords the defendant no discretion to accept an untimely filed registration form, given that it contains the hallmark of negative words that expressly invalidate untimely registrations. See, e.g., *Airey* v. *Feliciano*, 350 Conn. 162, 180, A.3d (2024); *State* v. *Banks*, 321 Conn. 821, 840, 146 A.3d 1 (2016); *Butts* v. *Bysiewicz*, supra, 298 Conn. 676–77. This raises the question of whether we can exercise our equitable powers to provide the plaintiff with relief from the operation of the mandatory statute voiding her untimely filed registration form.

This court's decision in *Butts* v. *Bysiewicz*, supra, 298 Conn. 665, is instructive. In *Butts*, a candidate for probate judge sought judicial relief after he filed his

certificate of party endorsement by the Democratic Party with the defendant after the deadline set by General Statutes § 9-388, which contained mandatory language invalidating late filings. See id., 667–68, 678–79. This court held that it has no authority to direct the defendant to afford a candidate relief from a mandatory statutory requirement, despite any "harsh consequences" that may ensue. Id., 689; see id., 688 (concluding that statutory language made it "clear that the legislature has barred the defendant from accepting an untimely filed certificate of endorsement and . . . from giving effect to the endorsement"). This court further held that, despite "competent evidence" establishing that the candidate was indeed the Democratic Party's endorsed candidate; id., 682; "[b]ecause the legislature required strict compliance with the deadline of § 9-388, the court [could not] invoke its equitable authority to compel the defendant to act in direct contravention to this clear legislative mandate." Id., 688–89; see also id., 689 and n.23 (deeming "inapposite" those "election cases holding that substantial compliance may satisfy a mandatory requirement").

Footnote 7 of this court's decision in *Butts*, however, left open the possibility that certain conduct by an election official might permit the court to exercise its equitable powers to provide relief from a mandatory statute. See id., 676 n.7. This court observed that "[s]ome jurisdictions have concluded that, in *extraordinary circumstances*, courts can excuse a failure to comply with mandatory filing deadlines for declarations of candidacy due to (1) an action by the state, particularly election officials, causing the late filing, or (2) the impossibility of compliance." (Emphasis added.) Id. Holding that "[n]o such circumstance [was] implicated in [*Butts*]," this court "express[ed] no opinion as to whether courts would have authority to extend filing deadlines under such extraordinary circumstances." Id., 677 n.7.

We assume without deciding that Connecticut courts have the authority identified in footnote 7 of *Butts* to excuse a candidate's failure to comply with a mandatory filing deadline when that noncompliance was caused by the action of an election official. See id., 676 n.7. In the present case, the plaintiff argues that she used the erroneously included, outdated statutory language in the cover letter in determining the date by which she had to file her registration form, rather than the October 7, 2024 deadline clearly and prominently stated both in the cover letter and on the registration form. This is a reliance based argument that implicates the doctrine of equitable estoppel, which is grounded in "[s]trong public policies," and is intended "to show what equity and good conscience require, under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties. . . . No one is ever estopped from asserting what would otherwise be his right, unless to allow its assertion would enable him to do a wrong. . . .

"There are two essential elements to an estoppel: the party [against whom it is asserted] must do or say *something* [*that*] *is intended or calculated to induce another to believe in the existence of certain facts and to act* [*on*] *that belief*; and the other party, influenced thereby, *must actually change his position or do something to his injury* [that] he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist." (Emphasis added; internal quotation marks omitted.) *Fischer* v. *Zollino*, 303 Conn. 661, 668, 35 A.3d 270 (2012). Whether an equitable estoppel exists is a question of fact; see, e.g., id.; and the "party claiming estoppel . . . has the burden of proof." Id., 667.

Moreover, "estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2)

only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." (Internal quotation marks omitted.) *Fadner* v. *Commissioner of Revenue Services*, 281 Conn. 719, 726, 917 A.2d 540 (2007). "A party seeking to justify the application of the estoppel doctrine by establishing that a public agency has induced his actions carries a significant burden of proof." Id., 727; see id., 728 (trial court did not commit clear error in concluding that equitable estoppel did not bar commissioner of revenue services from assessing deficiencies against taxpayers who claimed to have relied on incorrect advice from taxpayer helpline when taxpayers could not establish when they had called helpline or to whom they had spoken).

In determining whether equitable estoppel allows us to remedy the plaintiff's noncompliance with a mandatory election statute, we find instructive the Superior Court's decision in *Nardello* v. *Merrill*, Superior Court, judicial district of Waterbury, Docket No. CV-18-5022319-S (July 10, 2018) (66 Conn. L. Rptr. 711). In *Nardello*, a party endorsed candidate sought injunctive relief directing the defendant to place the candidate's name on the ballot for the Democratic primary for the sixteenth state senate district. Id., 712. The candidate timely filed her certificate of party endorsement pursuant to General Statutes § 9-400 (b) prior to the deadline but omitted the necessary district number; a representative of the Connecticut Democratic Party later completed the form with an erroneous district number. Id. When the candidate learned of the error, she contacted a senior staff member from the defendant's office, who advised her that she would " 'fix' " the issue. Id. The error was then corrected by a representative of the Democratic Party after the deadline, and the defendant rejected the corrected filing as untimely. Id., 713. Con-

sidering the "mandatory language" of § 9-400 (b), the court determined that the extraordinary circumstances contemplated in footnote 7 of *Butts* existed and that the candidate "ha[d] demonstrated the factual basis for a finding of equitable estoppel." Id., 713; see id., 716. The court distinguished *Butts*, in which the necessary filing was never made at all, and observed that, in *Nardello*, the filing was made on time initially, and the candidate acted with due diligence when she learned of the mistake by contacting a senior staff member from the defendant's office, who then advised her that she would " 'fix' " the error, but delayed in doing so out of her own inadvertence as to the filing deadline. Id., 716. The court found that, although "different interpretations could be made as to who ultimately should have borne responsibility for correcting the error on [the candidate's] certificate," she had "made appropriate efforts to resolve the error by notifying the defendant of the problem. [The candidate] relied on the response she received from the [defendant's] office that the matter would be corrected." Id. The court further found that the candidate's "change of position . . . was to her detriment" and that she had proven that she "exercised due diligence" because "she lacked any knowledge of the original omission, the initial correction made to the form and of any involvement by the Democratic Party." Id. Thus, the court concluded that the candidate "relied on not taking any further action to correct her certificate of endorsement by a representative of the [defendant] and that extraordinary circumstances [made] it highly inequitable and oppressive not to estop the [defendant]," and ordered the defendant to place the candidate on the primary ballot. (Internal quotation marks omitted.) Id.; see, e.g., *Ryshpan* v. *Cashman*, 132 Vt. 628, 629–30, 326 A.2d 169 (1974) (affording candidate equitable relief from untimely filing that was result of incorrect deadline on election

calendar published by Vermont secretary of state); cf. *Camillo* v. *Thomas*, Superior Court, judicial district of Middlesex, Docket No. CV-24-6042022-S (August 28, 2024) (distinguishing *Nardello* and declining to order defendant to place candidate's name on ballot because of his "noticeable lack of action to correct the deficiency [in the certificate of endorsement form] once it was brought to his attention," and his lack of a "role" in preparing or filing his paperwork, or ensuring that it was filed correctly with defendant); *In re Guzzardi*, 627 Pa. 1, 8–10, 14, 99 A.3d 381 (2014) (equitable relief was not warranted when candidate's failure to file timely statement of financial interests with Pennsylvania ethics commission was result of candidate's inadvertence).

The present case is squarely distinguishable from *Nardello*, rendering it not an extraordinary circumstance under which the equities support providing the plaintiff with relief from the mandatory statutory deadline. First, this case does not concern the correction of a timely, albeit erroneous, filing but, rather, concerns a failure to file timely at all. Second, the defendant clearly communicated a correct deadline of October 7, 2024, on the registration form and in the cover letter, with which twenty-nine other write-in candidates complied; the only write-in candidacy that was rejected as untimely was that of the plaintiff. Consistent with the plaintiff's own representations at the hearing before this court that she had simply failed to read that deadline, there is no evidence that the plaintiff exercised any due diligence by questioning the defendant or her staff about the potential inconsistency of the outdated statutory provision with the prominently stated October 7, 2024 deadline. This lack of due diligence is particularly striking because the defendant provides ample opportunity for candidates and voters to ask questions about ballot access and voting procedures, both through

generally available material on her website and a staffed email address, phone line, and public front desk. In this case specifically, the record indicates that the defendant's staff members had been solicitous of and helpful to the plaintiff, as she had both written and oral communications with Dussault, one of the defendant's staff attorneys, about where she should register as a write-in candidate, and whether she could do so for multiple offices simultaneously. Thus, to the extent that the defendant did provide some erroneous guidance in this case through her quotation of the outdated statutory provision in the cover letter, she nevertheless clearly stated the correct deadline in multiple places, and the plaintiff's lack of due diligence as a prospective write-in candidate does not establish her entitlement to equitable relief from the mandatory deadline set by § 9-373a.

The plaintiff's request for an injunction directing the defendant to accept her registration as a write-in candidate is denied. Judgment is rendered for the defendant.